**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| MARTIN AKERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 1:22cv696 |
| | ) | |
| DEPARTMENT OF DEFENSE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

JESSICA D. ABER
UNITED STATES ATTORNEY

DENNIS C. BARGHAAN, JR.
Deputy Chief, Civil Division
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3891
Fax:       (703) 299-3983
Email:  dennis.barghaan@usdoj.gov

DATE: October 17, 2022          ATTORNEYS FOR DEFENDANTS

## INTRODUCTION

It would be an epic understatement to say that the procedural history underlying the instant civil action is complex. After losing the security clearance needed to access classified information that was required by his federal employment position, and being indefinitely suspended as a result of that loss, plaintiff Martin Akerman filed a voluminous series of administrative claims concerning his employment with the Department of the Air Force and National Guard Bureau. Plaintiff followed those administrative claims with the instant civil action, in which he has now asserted more than a dozen interlocking claims, and which already spans nearly fifty (50) docket entries before defendants could file their initial response. Defendants here attempt to clarify plaintiff's currently-operative amended complaint, and in the process articulate the several reasons for which plaintiff's claims should be dismissed.

Plaintiff's specific employment-based claims, brought pursuant to the federal anti-discrimination statutes and the Whistleblower Protection Act, should be dismissed. *First*, pursuant to newly-issued Fourth Circuit authority, this Court lacks jurisdiction to entertain many of those claims because they were not a part of an actual "mixed case appeal" before the Merit Systems Protection Board ("MSPB") prior to arriving in this Court. *Second*, most of plaintiff's claims – including those involving his indefinite suspension – are based upon the Department of Defense's ("DOD") decision to suspend or revoke his security clearance, and thus are claims over which this Court lacks jurisdiction. *Third*, plaintiff's amended complaint consists of nothing more than a series of bald allegations concerning the employment events that he experienced, lacking any non-conclusory factual allegations to the effect that those events were caused by unlawful discriminatory or retaliatory animus, or that he suffered a severe or pervasive working environment.

Plaintiff's Privacy Act claims – premised upon DOD's dissemination of the basis of plaintiff's indefinite suspension to the Virginia Employment Commission as required after plaintiff applied for unemployment compensation – similarly fail. Initially, plaintiff cannot complain about DOD's decision to share the reason for which he was ostensibly "unemployed" when he himself applied for benefits, and Virginia law makes clear that the Commonwealth would inquire as to the reasons for his loss of employment. And in any event, DOD transmitted that information to the Commonwealth pursuant to a "routine use" exception that it and the Office of Personnel Management ("OPM") published in the *Federal Register*. Finally, plaintiff's amended complaint does not identify the putative inaccuracy in the employment record that DOD disseminated, and thus fails to state a plausible Privacy Act "accuracy" claim.

## BACKGROUND

In an effort to assist this Court, defendants will start with a fulsome explanation of the factual and litigative background of this civil action, including an understanding of the various administrative fora in which plaintiff has sought relief, and how those differing administrative claims impact this Court's ability to entertain plaintiff's instant amended complaint.

## I. PLAINTIFF'S AMENDED COMPLAINT – FACTUAL ALLEGATIONS

For all of the papers that have been filed in this civil action to date, it may come as somewhat of a surprise that the currently-operative amended complaint is remarkably short of

factual allegations.[1]  Nevertheless, that amended complaint contains allegations that provide at least the general timeline of the end of plaintiff's federal employment.[2]

In August 2021, plaintiff Martin Akerman was a federal civilian employee of the United States Department of the Air Force.  *Am. Comp.* (Dkt. No. 6), at 8 ¶2(a).  On August 17, 2021, the Department of Defense's ("DOD") Consolidated Adjudications Facility ("CAF")[3] issued a memorandum to plaintiff notifying him of its intent to revoke his eligibility for access to classified information and assignment to duties that have been designated national security sensitive.  *Id.*; *see also id.* att. 1.  That memorandum included a separate "Statement of Reasons" ("SOR") for this revocation decision, which explained that plaintiff had indicated in his National Security Questionnaire (SF-86) that he had been hospitalized for a mental health condition, and that during his interview with an investigator regarding that application, plaintiff indicated that the hospitalization was "involuntary."  *Id.* att. 1, at 5.  The SOR also explained that because of

---

[1]Defendants are aware that plaintiff has attempted to secure leave to amend his complaint yet again on *three* separate occasions during approximately the last two weeks (Dkt. Nos. 25-26; 36).  The instant memorandum concerns only the currently-operative *first* amended complaint, and defendants will respond to plaintiffs' multiple motions for leave on or before October 19, 2022, when their response is due under the Local Rules of this Court.  *See* Loc. Civ. R. 7(F)(1).

[2]For a more extensive discussion of those factual circumstances, defendants have attached the Initial Decision issued by a Merit Systems Protection Board ("MSPB") Administrative Judge ("AJ") in one of the numerous MSPB proceedings that plaintiff has instituted.  *See Defendants' Exhibit* ("DEX") A.  Although defendants provide this initial decision simply for this Court's edification, it is well-established that this Court can review materials outside the complaint in adjudicating a motion to dismiss on jurisdictional grounds brought pursuant to Federal Rule 12(b)(1).  *See Evans v. B.F. Perkins & Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  Moreover, if this Court possesses jurisdiction over any plaintiff's claims, claims brought under the Whistleblower Protection Act are adjudicated by this Court based on the administrative record of proceedings before the MSPB, *see Luther v. Gutierrez*, 618 F. Supp. 2d 483, 490 (E.D. Va. 2009), of which this Initial Decision would be a part.

[3]DOD CAF is a separate DOD component within the Defense Counterintelligence and Security Agency ("DCSA"), which is charged with, *inter alia*, conducting background investigations of personnel across DOD and adjudicating which personnel are eligible to access classified information.

this information, DCSA had asked plaintiff to provide it with a "professional medical opinion regarding whether a condition exists that could affect [his] judgment and/or reliability." *Id.*

While this issue regarding plaintiff's lack of eligibility to access classified information was ongoing, plaintiff changed positions within DOD – moving from the Air Force to the National Guard Bureau ("NGB") on December 20, 2021. *Id.* at 8 ¶2(b). That new NGB position, however, required plaintiff to possess, or be able to obtain, a Top Secret national security clearance. *Id.* att. 5, at 1. After becoming knowledgeable of plaintiff's above-discussed security clearance revocation, NGB suspended plaintiff's access to classified information, and then suspended him from employment – first for sixty-nine (69) days (on February 14, 2022), and then indefinitely (on April 11, 2022). *Id.* at 8 ¶¶2(c)-(e); *see also* DEX B (demonstrating that plaintiff was indefinitely suspended from his NGB employment effective April 24, 2022). On June 6, 2022, plaintiff voluntarily resigned from his NGB position, thus bringing his federal employment with DOD to an end. *Id.* at 8 ¶2(f).

## II. ADMINISTRATIVE PROCEEDINGS BEFORE THE MSPB

As the above-referenced events were transpiring, plaintiff commenced proceedings before the MSPB. It is impossible to overstate the largesse of plaintiff's efforts in engaging in administrative litigation on these issues. Not only has plaintiff filed numerous MSPB appeals of different types (often more than one appeal on identical subjects), but the number of filings within each particular appeal – including the length of each individual filing – is nothing short of staggering. As such, defendants have endeavored below to provide a precis of each of plaintiff's administrative "cases" before the MSPB; however, given the extensive nature of those proceedings, defendants (and undersigned counsel in particular) apologize in advance should a particular nuance of those proceedings be lost in the below discussion.

Before discussing those administrative proceedings, however, it is significant to explain the nature of MSPB proceedings – the complexity of which the Fourth Circuit described as "twists on the entangling vine," *Afifi v. DOI*, 924 F.2d 61, 63 (4th Cir. 1991) – and the different paths that an employee may take to get before the MSPB and ultimately this Court.

A.    MSPB Jurisdiction

When a federal employee is the subject of an employment-related decision that he believes to be unwarranted, there are a number of statutes that may provide a mechanism through which the employee can challenge, and potentially obtain relief from, such a decision. Those different statutes often overlap, and in turn, involve a number of different agencies – including, *inter alia*, the MSPB and the Equal Employment Opportunity Commission ("EEOC").

1.    *Direct MSPB Appeals*:  In the simplest of circumstances, an employee *either* requests generic review of the legitimacy of an employment action *or* alleges that an employment action was the result of discriminatory animus.  In the former scenario, federal employees are entitled to seek review of *certain* significant employment actions *directly* in the MSPB through an appeal brought pursuant to the Civil Service Reform Act ("CSRA") or the Whistleblower Protection Act ("WPA").[4]  *See* 5 U.S.C. §§ 7511(1)-(5); 7513(d) (listing those actions appealable directly to the MSPB); *see also id.* § 1214(a)(3).[5]  In the latter scenario, federal employees are entitled to seek relief (monetary and otherwise) from an allegedly-discriminatory employment action under a

---

[4]The WPA prohibits federal agencies from taking certain employment actions in retaliation for an employee's decision to make certain "protected disclosures" about, *inter alia*, an agency's violation of the law or gross management.  5 U.S.C. § 2302(b)(8); *see also Hooven-Lewis v. Caldera*, 249 F.3d 259, 274-75 (4th Cir. 2001).

[5]As described below, *see infra* Part II.A.3, the MSPB may also obtain jurisdiction to consider the validity of other less significant employment actions, but can only do so in certain circumstances.

series of anti-discrimination statutes, including Title VII or the Rehabilitation Act.  Such an

employee must first file an administrative complaint of discrimination with their employing

agency, and may ultimately seek a hearing with the EEOC.[6]

The difficulty arises, however, when these two paths cross; *i.e.*, when a federal employee

seeks to challenge those employment actions that are both directly appealable to the MSPB under

the CSRA or the WPA, and as discriminatory, simultaneously.  These types of challenges are

known as "mixed cases," *see* 29 C.F.R. § 1614.302(a), and they are further divided, depending

on the administrative venue in which the employee first files.  A "mixed-case complaint" is a

complaint of discrimination filed with the employee's agency that is related to an employment

action that is appealable (but has not yet been appealed) to the MSPB.  *Id.*  A "mixed-case

appeal," by contrast, is an appeal filed with the MSPB that alleges that the employment action at

issue was also motivated by discriminatory animus.  *Id.* § 1614.302(a)(2).  Judicial review of

such "mixed cases" is obtained in an appropriate federal district court.  *See, e.g.*, *Kloeckner v.*

*Solis*, 568 U.S. 41, 56 (2012).

2.    *Individual Right of Action Appeals*:  As stated above, an employee may *directly* appeal

certain significant employment decisions to the MSPB; *e.g.*, termination or lengthy suspension.

But employees can still secure MSPB review of other less significant employment actions –

known as "prohibited personnel actions," *see* 5 U.S.C. § 2302 – under the WPA.  *See generally*

*Zachariasiewicz v. DOJ*, 48 F.4th 237, 242-43 (4th Cir. 2022).  To do so, however, an employee

---

[6] This Court is well familiar with the fulsome nature of the administrative process with respect to claims of protected class discrimination in the federal workplace.  *See Laber v. Harvey*, 438 F.3d 404, 416-17 (4th Cir. 2006) (en banc).  The only exception to the requirement that a federal employee traverse this process before coming to federal court on a claim of protected-class discrimination is the Age Discrimination in Employment Act ("ADEA"), in which a federal employee can exhaust his administrative remedies by filing a notice with the EEOC 30 days prior to commencing a civil action.  *See, e.g.*, *Stevens v. Dep't of the Treasury*, 500 U.S. 1, 5-6 (1991).

must first file a complaint with the Office of Special Counsel ("OSC"); "[i]f the OSC does not act on a complaint alleging a WPA claim," the employee can still seek corrective action by filing an "individual right of action" ("IRA") appeal in the MSPB after the OSC's review.  *Id.* at 243 (quoting *Fleming v. Spencer*, 718 Fed. Appx. 185, 186 (4th Cir. 2018) (per curiam)).

> **B.    PLAINTIFF'S ADMINISTRATIVE PROCEEDINGS**

With that as background, the following are the several *recent* MSPB proceedings that plaintiff has commenced concerning his federal employment.  With respect to each entry, defendants will provide the date on which the proceeding was commenced, the type of proceeding (direct or IRA appeal), the specific "claims" (or employment actions) that plaintiff has sought to challenge in each, and the current status of the proceeding.

1.    *Akerman v. Dep't of the Air Force*, No. DC-1221-22-0445-W-1 (IRA Appeal) (docketed June 1, 2022).  In this IRA appeal, plaintiff challenges six separate employment actions on the part of the Air Force under the WPA:  (1) issuance of written admonishment against plaintiff for unprofessional conduct; (2) letter of reprimand issued against plaintiff for conduct unbecoming; (3) issuance of amended performance plan; (4) interference with student loan repayment benefits; (5) fraudulent alteration of SF-50; and (6) interference with security clearance determination.  DEX C.  The appeal currently remains before the MSPB AJ.

2.    *Akerman v. Dep't of the Army (NGB)*, No. DC-1221-22-0257-W-1 (IRA Appeal) (commenced February 28, 2022).  In this IRA appeal, plaintiff initially sought to challenge virtually every interaction he had with colleagues, supervisors, and contractors with respect to his employment in 2021-22, totaling 69 (or 72) claims, including claims that were also a part of the aforementioned IRA appeal against the Air Force.  The presiding MSPB AJ has issued an order concluding that plaintiff has only exhausted his claims on *one* of those employment actions

– an informal written counseling, DEX D, a decision over which NGB has sought

reconsideration.  The appeal is currently before the MSPB AJ for issuance of an initial decision.

3.    *Akerman v. Dep't of the Army (NGB)*, No. DC-0752-22-0376-I-1 (Direct Appeal)

(commenced April 26, 2022).  In this direct appeal, plaintiff challenges NGB's decision to

suspend him indefinitely for failing to meet a condition of his employment; namely, his failure to

obtain/ maintain a Top Secret security clearance.  On August 10, 2022, an MSPB AJ issued an

initial decision that affirmed NGB's suspension, concluding, *inter alia*, that it lacked jurisdiction

to consider the propriety of an employment decision (such as a suspension) based on security

clearance issues.  DEX A.  Plaintiff has attempted to file a petition for review of this initial

decision with the full MSPB.

4.    *Akerman v. Dep't of the Army (NGB)*, No. DC-1221-22-0459-W-1 (IRA Appeal)

(commenced on June 10, 2022).  In this IRA Appeal, plaintiff challenges NGB's decision to

place him on paid "notice" leave, as opposed to plaintiff's preferred "investigative" leave.

Plaintiff has requested that the presiding AJ issue an initial decision on the current record, DEX

E, and the appeal remains pending before the MSPB.

5.    *Akerman v. Dep't of the Army (NGB)*, No. DC-1221-22-0257-S-1 (direct appeal)

(commenced on March 3, 2022).  In this appeal, plaintiff sought a stay of NGB's proposed (at

that time) indefinite suspension.  The presiding MSPB AJ issued an order dismissing the appeal,

holding that the MSPB lacks jurisdiction over a proposed employment action.  Although plaintiff

filed a petition for review with the full MSPB, it was dismissed because the MSPB's rules do not

authorize a petition for review on a decision on a request for a stay.

6.    *Akerman v. Dep't of the Army (NGB)*, No. DC-3443-22-0340-I-1 (direct appeal)

(commenced on April 1, 2022).  In this direct appeal, plaintiff appeared to challenge his

placement on paid leave.  The presiding MSPB AJ dismissed the appeal in an order dated April 29, 2022, for lack of jurisdiction.

7.    *Akerman v. Dep't of the Army (NGB)*, No. DC-0752-22-0376-S-1 (stay request) (commenced on April 26, 2022).  In this appeal, plaintiff sought a stay of NGB's decision to suspend him indefinitely for failing to obtain/maintain a Top Secret security clearance.  The presiding MSPB AJ dismissed the request in an order dated April 29, 2022, holding that plaintiff was unlikely to prevail on the merits of the appeal.

## III.    PLAINTIFF'S AMENDED COMPLAINT – CLAIMS

It is also difficult to understand the exact nature of the claims that plaintiff has sought to assert in his currently-operative amended complaint.  Consistent with the well-accepted maxim that the pleadings authored by *pro se* litigants must be construed liberally in the interest of justice, *see DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018), the following attempts to amalgamate plaintiff's claims into a comprehensible list to assist this Court in its adjudication:

1.    "Discrete Act" discrimination and retaliation claims[7] based on his indefinite suspension and what plaintiff has termed a "constructive discharge," based on plaintiff's inability to obtain/maintain a security clearance – brought pursuant to the Rehabilitation Act, the ADEA, and the WPA (identified as "Issue" 1, and Claims 2b, 2c, 4b, 4c,[8] 5a, and 7a).[9]

---

[7]Disparate treatment claims brought under the federal anti-discrimination are typically split into two categories – "discrete acts" (claims based on individual employment decisions) and "hostile work environment" (claims based on a collection of employment-related conduct).  *See Nat'l Passenger R.R. Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002).

[8]Claims 2 and 4 appear to be identical – both asserting "discrete acts" under the WPA.

[9]Within the specific section of the amended complaint in which plaintiff attempts to establish this Court's "jurisdiction" over his claim, *Am. Comp.*, at 5-6, plaintiff appears to identify a "proposed" indefinite suspension as the basis of these claims.  Because the only *factual allegations* concerning these claims, *see id.* at 8, do not use the "proposed" modifier, defendants have presumed that plaintiff seeks to challenge the actual indefinite suspension here.

2.      "Discrete Act" discrimination and retaliation claims based on the Air Force's alleged failure to honor its agreement to payment student loan repayments on plaintiff's behalf brought pursuant to the WPA and the ADEA (identified as Claims 2a, 4a, and 5b).

3.      "Hostile Work Environment" discrimination and retaliation claims brought under the WPA, ADEA, and Rehabilitation Act (identified as Claims 3a-b, 6a, 8a).

4.      "Systemic" or "Pattern and Practice" discrimination and retaliation claims – brought under the WPA, ADEA and Rehabilitation Act (identified as Claims 3c, 6b, 8b).

5.      Privacy Act claims related to DOD's dissemination of a record concerning plaintiff's indefinite suspension from employment to the Virginia Employment Commission pursuant to plaintiff's own application for unemployment benefits (identified as Claims 9a, 9b).

## ARGUMENT

## I.      GENERAL STANDARDS

### A.      FEDERAL RULE 12(b)(1)

Federal Rule 12(b)(1) serves as the appropriate vehicle to challenge the court's subject matter jurisdiction in a particular matter. *See, e.g., Coulter v. United States*, 256 F. Supp. 2d 484, 486 n.3 (E.D. Va. 2003), *aff'd*, 90 Fed. Appx. 60 (4th Cir. 2004). The plaintiff bears the burden of establishing the court's subject matter jurisdiction, and although this Court may utilize the allegations contained within the four corners of the plaintiff's complaint as *evidence* in determining whether it possesses jurisdiction over a dispute, it may also consider other evidence outside the pleadings if necessary. *See Richmond, Fredericksburg, & Potomac R.R. Corp. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Coulter*, 256 F. Supp. 2d at 486 n.3.

### B.      FEDERAL RULE 12(b)(6)

To the contrary, a motion pursuant to Federal Rule 12(b)(6) serves to test the legal

sufficiency of the plaintiff's complaint in relation to the factual averments he or she puts

forward.  Although a court must accept all well-pled allegations in adjudicating such a motion, it

need not credit allegations that are merely conclusory.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 675

(2009).  In *Iqbal*, the Supreme Court articulated the proper standard of review:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter,
> accepted as true, to "state a claim to relief that is plausible on its face."  A claim has
> factual plausibility when the plaintiff pleads factual content that allow the court to draw
> the reasonable inference that the defendant is liable for the misconduct alleged.

*Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  Accordingly, although (as before) a court is

required to adjudge the factual averments contained within a complaint against the substantive

law governing the claim, now "where the well-pleaded *facts* do not permit the court to infer more

than the *mere possibility* of misconduct," the complaint fails.  *Id.* at 679 (emphasis added).

## II.   PLAINTIFF'S EMPLOYMENT CLAIMS MUST BE DISMISSED ON SEVERAL INDEPENDENT GROUNDS

This memorandum will first turn to plaintiff's employment-related claims; *i.e.*, WPA,

Rehabilitation Act, ADEA.  There are a myriad of reasons for which this Court should dismiss

these claims – some premised on the limits of this Court's subject-matter jurisdiction and some

on the legal sufficiency of plaintiff's allegations.

### A.   PLAINTIFF CANNOT REMOVE THE MAJORITY OF HIS CLAIMS FROM THE MSPB ADMINISTRATIVE PROCESS AS A "MIXED CASE"

The first question is whether plaintiff can vest this Court with jurisdiction over his

employment-related claims, given that those claims (if exhausted at all) currently remain

ensconced within the administrative process at the MSPB.  Given the language contained within

his amended complaint, it appears that plaintiff seeks to avail himself of statutory provision

contained within the CSRA that allows employees to remove "mixed cases" – *i.e.*, those appeals

in which an employee "has been affected by an action which the employee . . . may appeal to the [MSPB], and [] alleges that a basis for the action was discrimination," 5 U.S.C. § 7702(a)(1) – from the MSPB to federal district court that have been languishing without a "judicially-reviewable decision" for more than 120 days. *See id.* § 7702(e)(1)(B); *see also Am. Comp.*, at 5 ("Exhausted through the [OSC] and the [MSPB] (More than 120 days from the timely filed Individual Right of Action appeal with MSPB without a judicially reviewable action.")).

In large part, however, this provision does not apply to the claims that plaintiff seeks to assert here. As the Fourth Circuit confirmed less than two months ago, § 7701(e)(1)(B) only applies to those significant employment actions that can be the subject of a *direct* appeal to the MSPB, not those brought to the MSPB through an IRA appeal after submission to the OSC. *See Zachariasiewicz*, 48 F.4th at 244. In *Zachariasiewicz*, a DEA employee alleged that he was not promoted to a particular position in violation of the CSRA and WPA, and as a result of protected-class discrimination under Title VII. *See id.* at 242. Because that action was not directly appealable to the MSPB, *see* 5 U.S.C. §§ 7512-13, the employee was required first to submit his allegations to OSC, and then file an IRA appeal with the MSPB once the OSC closed its inquiry, *see Zachariasiewicz*, 48 F.4th at 241. Because the MSPB had not issued a "judicially-reviewable action" within 120 days of the commencement of his IRA appeal, the employee abandoned the MSPB appeal and filed a civil action in federal district court. *See id.* at 242. The Fourth Circuit affirmed the dismissal of that complaint, holding that the employee could not avail himself of § 7701(e)(1)(B):

> This guidance from prior cases and the mechanics of the CSRA compel us to conclude that the personnel action giving rise to an IRA appeal cannot form the core of a mixed case because that personnel action is not directly appealable to the MSPB and instead must be challenged within the OSC prior to the MSPB.

*Id.* at 244.  Put simply, unless the employment action that is the subject of a MSPB appeal is significant enough to be directly appealable to the MSPB, as opposed to through an IRA appeal, it is not a "mixed case," and § 7701(e)(1)(B) does not vest this Court with jurisdiction.

As applied here, a large swath of plaintiff's claims concern employment actions that are not directly appealable to the MSPB – and are the subject of plaintiff's pending IRA appeals – and thus fall outside the ambit of § 7701(e)(1)(B)'s jurisdictional grant.  In particular, plaintiff's claims concerning the Air Force's alleged failure to honor its agreement to re-pay plaintiff's student loans (identified as Claims 2a, 4a, and 5b), each of his hostile work environment claims (identified as Claims 3a-b, 6a, 8a), and his purported "systemic" or "pattern and practice" discrimination claims (identified as Claims 3c, 6b, and 8b), are not directly appealable to the MSPB, *see* 5 U.S.C. §§ 7512-13, and have thus been asserted (if at all) as a part of plaintiff's pending IRA appeals.  The only employment actions – and thus claims in this civil action – that, at least arguably, are directly appealable to the MSPB were plaintiff's indefinite suspension as a result of his lack of security clearance and his constructive discharge (identified as Claims 2b, 2c, 4b, 4c, 5a, and 7a).  And it does not appear that plaintiff appealed his "constructive discharge" to the MSPB at all – given that each of his MSPB appeals were commenced prior to his resignation from NGB in June 2022.  *See Am. Compl.*, at 8 ¶2(f).  Accordingly, the only claims over which this Court should possess jurisdiction are those concerning plaintiff's indefinite suspension.

There is one caveat to this analysis.  As *Zachariasiewicz* recognized, this analysis only applies to attempts to vest jurisdiction in this Court over employment-related claims that arise out of mixed case appeals at the MSPB under § 7701(e)(1)(B) – there might be another avenue through which an employee has appropriately exhausted a claim of *discrimination* so as to gain

entry into this Court.  *See Zachariasiewicz*, 48 F.4th at 248-49.  And here, plaintiff has ostensibly exhausted his age discrimination claims through the alternative method offered by the ADEA – a simple notice of intent to sue tendered to the EEOC more than thirty (30) days prior to commencing a civil action.  *See supra* n.5.  As such, this Court may also entertain plaintiff's ADEA claims (identified as Claims 5a-b, 6a-b).

### B.    THIS COURT LACKS JURISDICTION OVER ANY CLAIM RELATED TO SECURITY CLEARANCE DECISION-MAKING

Regardless of the above, there can be little doubt that any of plaintiff's claims concerning his indefinite suspension and self-titled "constructive discharge" are intertwined with DOD's decision to revoke or suspend plaintiff's eligibility to access classified information and thus plaintiff's inability to obtain the Top Secret clearance that his NGB position required.  Not only are the allegations contained within the section of plaintiff's amended complaint related to these topics exclusively trained on the suspension of plaintiff's security clearance, *Am. Compl.*, at 8, but the formal notice concerning plaintiff's indefinite suspension explicitly provides that it was issued because of plaintiff's inability to obtain or maintain a security clearance, DEX B.  And thus, under binding authority, this Court lacks jurisdiction to entertain these claims.

In *Department of the Navy v. Egan*, 484 U.S. 518 (1988), the Supreme Court held that neither administrative nor judicial tribunals could "review the substance of an underlying decision to deny or revoke a security clearance in the course of reviewing an adverse action." *Id.* at 520.  More specifically, the Supreme Court concluded that the typical presumption in favor of reviewability of government decisions "runs aground when it encounters concerns of national security, as in this case, where the grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch." *Id.* at 527.  An Article III court, therefore, cannot "review the

substance of such a judgment and . . . decide whether the agency should have been able to make the necessary affirmative prediction with confidence" or "determine what constitutes an acceptable margin of error in assessing the potential risk." *Id.* at 529. For these reasons, "the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it." *Id.*

Since *Egan*, the Fourth Circuit has extended the principles the Supreme Court announced to the Title VII context, holding that *Egan* forecloses challenges to not only the security clearance denial itself, but also claims that would require a court to evaluate the underlying merits of the security clearance decision. *See Becerra v. Dalton*, 94 F.3d 145, 149 (4th Cir. 1996); *see also Campbell v. McCarthy*, 952 F.3d 193, 203 (4th Cir. 2020) (holding similarly with respect to the WPA and ADEA); *Guillot v. Garrett*, 970 F.2d 1320, 1323-26 (4th Cir. 1992) (holding similarly with respect to Rehabilitation Act). In *Becerra* – a paradigmatic case in this context – a Navy employee alleged that the agency initiated a security clearance investigation based on information that it allegedly knew or should have known was false, then suspended his security clearance, and ultimately terminated his employment as a result. *See Becerra*, 94 F.3d at 148. The employee then brought a Title VII claim, alleging that the Navy only initiated the investigation in order to retaliate against him for prior complaints of discrimination, and arguing the "instigation of the investigation into the security clearance as a form of retaliation [was] judicially reviewable." *Id.* at 148-49. The Fourth Circuit rejected that argument, explaining that the "distinction between the initiation of a security investigation and the denial of a security clearance is a distinction without a difference," because the "question of whether the Navy had sufficient reasons to investigate the plaintiff as a potential security risk" went to the "very heart" of the agency's power to decide who could access classified information. *Id.* at 149; *see also*

*Kruise v. Fanning*, 214 F. Supp. 3d 520, 524 (E.D. Va. 2016) (Ellis, J.) ("*Egan* bars judicial review of Title VII . . . claims arising out of security clearance decisions."), *aff'd*, 693 Fed. Appx. 213 (4th Cir. 2017). More recently, the Fourth Circuit has held that *Egan*'s bar applies to more than typical security clearance decisions, and bars an Article III court's jurisdiction to consider any agency action that constitutes a predictive judgment concerning whether an employee constitutes a security risk. *See Mowery v. NGA*, 42 F.4th 428, 434 (4th Cir. 2022).

NGB's decision to suspend plaintiff from his position was entirely premised, as the amended complaint confirms, upon DOD's security clearance determinations; namely, plaintiff's failure to obtain or maintain a Top Secret security clearance and access to classified information. And plaintiff's "constructive discharge" claim – as he has chosen to plead it in his amended complaint – is similarly premised on those same security clearance-related decisions. As such, consistent with the MSPB AJ's analysis of the same claims, this Court lacks subject-matter jurisdiction to consider plaintiff's claims regarding his indefinite suspension and constructive discharge (identified as "Issue" 1, and Claims 2b, 2c, 4b, 4c, 5a, and 7a).

### C.    ALL OF PLAINTIFF'S EMPLOYMENT-RELATED CAUSES OF ACTION FAIL TO PLEAD PLAUSIBLE CLAIMS FOR RELIEF

Even if this Court could somehow exercise jurisdiction over plaintiff's employment-related claims, those claims – both discrimination and WPA alike – should be dismissed for failure to state a plausible claim. As stated above, after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff's complaint must provide non-conclusory allegations that contains sufficient facts to "nudge[]" the particular claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The Fourth Circuit has now clearly held that this requirement is equally applicable to claims brought pursuant to the federal anti-discrimination statutes. *See McCleary-Evans v. Maryland Dep't of Trans.*, 780 F.3d 582, 588 (4th Cir. 2015); *Coleman v.*

*Maryland Court of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010), *aff'd on other grounds*, 132 S. Ct. 1327 (2012).  Although a "plaintiff is not required to plead facts that constitute a [Title VII] *prima facie* case in order to survive a motion to dismiss," the "factual allegations must be enough to raise a right to relief above the speculative level," and therefore "the Court looks to the elements of a *prima facie* case but does not require proof of th[ose] elements, only plausibility." *Robinson v. Loudoun Cty. Pub. Sch.*, 2017 WL 3599639, at *3 (E.D. Va. Aug. 18, 2017).[10]

And here, plaintiff's amended complaint lacks *any* non-conclusory factual allegations through which this Court could plausibly conclude that either the Air Force or NBG engaged in protected class discrimination or whistleblower retaliation.

1.    *Protected Class Discrimination Claims*:  Whether of the discrete act or hostile work environment variety, plaintiff's amended complaint fails to state a plausible claim under either the ADEA or Rehabilitation Act.  Generally speaking, "[t]o state a plausible claim for discrimination, a plaintiff must allege facts to establish: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside of the protected class."  *See Garrett v. Cape Fox Fac. Servs.*, 2020 WL 265869, at *4 (E.D. Va. Jan. 17, 2020) (quoting *Coleman*, 626 F.3d at 190)).[11]

---

[10]Because plaintiff is proceeding *pro se*, all decision that can only be found through online databases have been attached as DEX F.

[11]The *prima facie* formulation with respect to a claim of disability discrimination under the Rehabilitation Act is not significantly different, requiring a plaintiff to demonstrate "(i) that he has a qualifying disability, (ii) that he is otherwise qualified for the employment or benefit in question, and (iii) that he was excluded from the employment or benefit "due to discrimination solely on the basis of the disability."  *Luther*, 618 F. Supp. 2d at 491 (quoting *Doe v. Univ. of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995)).  Plaintiff's complaint is similarly devoid of any non-conclusory allegations even identifying his "qualifying disability" under the statute, let alone through which one could plausibly conclude that the employment actions at issue here were motivated by animus directed to that unidentified disability.

And with respect to his hostile work environment claims, plaintiff must sufficiently allege that the putative harassment "(1) was unwelcome; (2) was based on her protected class; (3) was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive work environment; and (4) was imputable to her employer." *Knight v. McCarthy*, 439 F. Supp. 3d 744, 761 (E.D. Va. 2020).

a.      Here, plaintiff has failed to plead any non-conclusory factual allegations that would render the conclusion that he was the victim of protected class animus plausible.  The particular circumstances presented to the Fourth Circuit in both *McCleary-Evans* and *Coleman* are instructive.  Taking the latter first, plaintiff in *Coleman* was a former employee of the Maryland court system who brought a Title VII claim alleging that his termination was motivated by racial animus.  *See id.* at 189.  Coleman's specifically averred that he "'was treated differently as a result of his race than whites' and specifically identif[ied] [another employee] as a white person who was not disciplined despite having" ethical problems.  *Id.* at 191.  The Fourth Circuit held that these allegations were simply not sufficient to render Coleman's claim plausible:

> [A]lthough Coleman's complaint conclusorily alleges that Coleman was terminated based on his race, it does not assert facts establishing the plausibility of that allegation. However, the complaint fails to establish a plausible basis for believing [the other white employee] and Coleman were actually similarly situated or that race was the true basis for Coleman's termination. . . . Absent such support, the complaint's allegations of race discrimination do not rise above speculation.

*Id.*  The Fourth Circuit reaffirmed these same principles in *McCleary-Evans*; there, plaintiff filed a similar complaint that simply averred, with respect to animus, that the employer "did not select her because of the relevant decisionmakers' bias against African American women." *McCleary-Evans*, 780 F.3d at 586.  The panel held, however, that these "'naked' allegations – a 'formulaic recitation' of the necessary elements – 'are no more than conclusions' and therefore do not suffice." *Id.*; *see also Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017).

Plaintiff's amended complaint contains *none* of these allegations – even those that the Fourth Circuit found wanting in *Coleman* and *McCleary-Evans*. In fact, plaintiff's complaint merely states the bald facts of the employment actions to which he was subjected, and then, in conclusory fashion, asserts claims under the federal anti-discrimination statutes. Under binding Fourth Circuit precedent, these claims should be dismissed.

b.    These difficulties in alleging protected class animus are, of course, equally applicable to plaintiff's hostile work environment claims. But those claims suffer from an additional pleading deficiency – the lack of any allegations concerning plaintiff's working environment, let alone non-conclusory factual allegations through which one could plausibly conclude that the environment was either "severe or pervasive"; *i.e.*, that the "workplace is permeated with discriminatory intimidation, ridicule, and insult." *Pueschel v. Peters*, 577 F.3d 558, 565 (4th Cir. 2009). Indeed, plaintiff's amended complaint simply states, in conclusory fashion, that he "deliberately endured a hostile work environment both in the Air Force and in the [NGB] for the 12 months between April 2021 and March 2022," and that "[m]ore will be provided in court." *Am. Compl.*, at 9 ¶4(a). That is the exact *opposite* of plaintiff's obligation – in order to proceed in this Court, he must *first* provide factual allegations that state a plausible claim, not the other way around. *See Iqbal*, 556 U.S. at 678-79. As such, these claims – and plaintiff's constructive discharge claim (which necessarily fails if his hostile work environment claim fails), *see Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 195 n.7 (5th Cir. 1996) – should be dismissed.

c.    Finally, plaintiff's putative "systemic" discrimination claims must be dismissed. In addition to the same pleading deficiencies identified above – plaintiff's amended complaint on this score contains the same type of conclusory allegations that do not give rise to a plausible claim of discriminatory animus – and whether Congress has waived the United States' sovereign

immunity for such a claim, the Fourth Circuit has clearly held that individual plaintiffs cannot present a "private, non-class cause of action for pattern or practice discrimination." *Lowery v. Circuit City Stores*, 158 F.3d 742, 760-61 (4th Cir. 1998), *vacated on other grounds*, 527 U.S. 1031 (1999); *see also Marcus v. Geithner*, 813 F. Supp. 2d 11, 20 (D.D.C. 2011).

2.    *WPA Retaliation Claims*:  Similar pleading deficiencies infect plaintiff's WPA retaliation claims.  To be sure, this Court does not review the MSPB's decision with respect to a WPA retaliation claim *de novo*; rather, this Court's review is deferential – only determining whether the MSPB's decision is supported by "substantial evidence" – and is governed by the administrative record of proceedings before the MSPB without discovery.  *See Luther*, 618 F. Supp. 2d at 490; *see also Rana v. United States*, 812 F.2d 887, 889 n.1 (4th Cir. 1987) ("[T]he nondiscrimination claims receive a record review.").  Nevertheless, even to get to that deferential review, plaintiff must plead non-conclusory facts that would make a WPA violation plausible.

In order to succeed on a WPA claim, plaintiff must demonstrate "(1) that []he engaged in a whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8); and (2) based on the protected disclosure, the [agency] took or failed to take a personnel action as defined by 5 U.S.C. § 2302(a)." *Hooven-Lewis*, 249 F.3d at 276.  Plaintiff's amended complaint contains no non-conclusory factual allegations that would render either of these conclusions plausible.  It does not even identify the nature of the disclosures that he made to either the Air Force or NGB, let alone provide non-conclusory factual allegations sufficient to allow one to conclude that those disclosures were plausibly "protected" under the statute.  And plaintiff provides no factual allegations whatsoever that would allow one to conclude plausibly that those disclosures were causally-related to the employment actions identified in the complaint.  Just as with his other claims, plaintiff's amended complaint contains only his characterizations of the

employment actions that form the basis of his claims, but fails to provide any non-conclusory factual allegations that would render his claim of *retaliatory animus* directed to his *whistleblowing activity* plausible.  Plaintiff's WPA claims should thus also be dismissed.

## IV.    PLAINTIFF'S PRIVACY ACT CLAIMS SHOULD BE DISMISSED

Finally, plaintiff asserts that DOD violated the Privacy Act as a result of its response to the Virginia Employment Commission's ("VEC") demand for information, as required by Virginia law, in connection with plaintiff's decision to apply for state unemployment benefits.  Plaintiff's amended complaint simply alleges that on June 13, 2022, pursuant to VEC's request for information regarding plaintiff's employment, a particular DOD component "unnecessarily and willfully leaked private, inaccurate, and sensitive medical information about [him] to the VEC." *Am. Comp.*, at 8.[12]   Plaintiff's amended complaint also attaches the information that he alleges DOD transmitted to VEC (and thus forms the basis of his Privacy Act claims):  the August 2021 decision by DOD CAF to revoke plaintiff's eligibility to access classified information, which merely repeated the information that plaintiff provided in his national security questionnaire and subsequent investigatory interview, and identified the specific action that DOD was taking as a result of that information. *Id.* att.1.[13]

Based on these allegations, plaintiff asserts Privacy Act claims for "failure to assure fairness in agency determinations" (Claim 9a) and "failure to comply with other Privacy Act provisions" (Claim 9b), pursuant to 5 U.S.C. §§ 552a(g)(1)(C) & (D), respectively.  Before

---

[12]This information, plaintiff maintains, is "now a part of the records of Virginia" (and thus will somehow impair his future employment prospects), and has "adversely affected [his] ability to receive unemployment benefits." *Am. Comp.*, at 8.

[13]Plaintiff's amended complaint does not make clear whether this attachment is the entirety of DOD's submission to the VEC, or simply a portion of that submission.  For purposes of this motion to dismiss, however, DOD assumes that the attachment is the entirety of the submission.

proceeding to analyze these specific claims, however, it is important to provide a general

background on the Privacy Act and the Virginia unemployment compensation system.

A.  BACKGROUND

1.  Privacy Act

The Privacy Act of 1974, codified at 5 U.S.C. § 552a, provides "a comprehensive and

detailed set of requirements for the management of confidential records held by Executive

Branch agencies." *FAA v. Cooper*, 566 U.S. 284, 287 (2012).  The Privacy Act is not concerned

with each and every document created or maintained by the federal government; rather, the

statute exclusively concerns "records" (*i.e.*, an "item, collection, or grouping of information

about an individual," 5 U.S.C. § 552a(a)(4)), that are contained within a "system of records"

(*i.e.*, "a group of any records under the control of any agency from which information is

retrieved by the name of the individual" or other personal identifier, *id.* § 552a(a)(5)).  From that

premise, the statute contains an extensive number of provisions – with prescriptions on federal

government action and a corresponding laundry list of exceptions – but only two are pertinent to

plaintiff's instant claims:  (a) the non-disclosure provision; and (b) the accuracy provision.

a.  *Non-Disclosure*:  The Privacy Act precludes federal agencies from "disclos[ing] any

record which is contained in a system of records . . . except pursuant to a written request by, or

with the prior written consent of, the individual to whom the record pertains."  *Id.* § 552(b).  But

the statute nevertheless provides a series of exceptions to that general prohibition on non-

disclosure, including "for a routine use," *id.* § 552(b)(3), which the statute defines as "the use of

[a] record for a purpose which is compatible with the purpose for which it was collected," *id.*

§ 552a(a)(7); *see also Fattahi v. ATF*, 328 F.3d 176, 178 (4th Cir. 2003).  In order to avail itself of

this exception, federal agencies must publish all "routine uses" for each particular "system of records" in the *Federal Register*. *See* 5 U.S.C. § 552a(e)(4)(D).

In the event that a federal agency violates this non-disclosure provision, and the violation has an "adverse effect on an individual," the Privacy Act provides that individual with a private cause of action against the agency. *Id.* § 552a(g)(1)(D). And if "the agency acted in a manner which was intentional or willful," the individual may obtain his "actual damages," *id.* § 552a(g)(4)(A), which is limited to "proof of tangible economic loss" and not more nebulous "pain and suffering," *Cooper*, 566 U.S. at 303.

b.      *Accuracy*:  The Privacy Act also generally requires federal agencies to "maintain all records which are used by the agency in making any determination about any individual with such accuracy . . . as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). As above, the individual is limited to "actual damages" and must demonstrate that the violation was "intentional or willful," *see* 5 U.S.C. § 552a(e)(5).

It is important to note in this regard that, although "the Privacy Act allows for amendment of 'factual or historical' errors, it is not 'a vehicle for amending the judgments of federal officials.'" *Kursar v. TSA*, 751 F. Supp. 2d 154, 169 (D.D.C. 2010) (quoting *Kleiman v. Dep't of Energy*, 956 F.2d 335, 337-38 (D.C. Cir. 1992), *aff'd*, 442 Fed. Appx. 565 (D.C. Cir. 2011). And as such, the statute "does not permit a court to alter documents that accurately reflect an administrative action no matter how contestable the conclusion may be." *Douglas v. Ag. Stab. & Cons. Serv.*, 33 F.3d 784, 785 (7th Cir. 1994).

## 2.      Virginia Unemployment Compensation

Like most states, Virginia has legislatively enacted a system through which residents can apply for benefits during periods of unemployment. *See generally* VA. CODE ANN. §§ 60.2-100,

*et seq.*  Under that system, an unemployment applicant may be disqualified from obtaining

benefits for any number of statutorily-identified reasons, including if he "is employment because

he has been discharged for misconduct connected with his work."  *Id.* § 60.2-618(2)(a).  The

statute further defines "misconduct" to include, *inter alia*, an "employee's loss of or failure to

renew a license or certification that is a requisite of the position held by the employee."  *Id.* §

60.2-618(2)(b)(5).  Accordingly, in order to ensure that a claimant is qualified for benefits, VEC

transmits a request for information to the claimant's last employer.  *See id.* § 60-2-619(B).

Leaving aside the notice provided to claimants through the Virginia Code, this is something that

VEC makes abundantly clear to claimants:

> If you are unemployed for any reason other than a lack of work, it is necessary to gather the facts concerning your separation from employment and render a written determination regarding eligibility.
>
> . . .
>
> You give your reason for being unemployed when you file your application for benefits. This information along with a questionnaire is sent to your former employer for completion.

*Applying for Benefits*, *available at* <www.vec.virginia.gov/unemployed/claimant-

handbook/Applying-for-Benefits> (visited Oct. 16, 2022).

Once the claimant's last employer provides information concerning that employment,[14]

the VEC proceeds to adjudicate whether the claimant is entitled to benefits through a robust

administrative system.  *See* Va. Code Ann. § 60.2-619(B).  Initially, an appointed VEC official

makes an initial determination on the claim, which becomes final unless either the claimant or

his prior employer (who is required to pay for benefits provided) appeals that determination to an

---

[14]Of note, Virginia statute provides that any "[i]nformation furnished to the [VEC] . . . shall not be published or be open to public inspection, other than to public employee in the performance of their public duties."  § 60.2-623(B).

appellate panel within VEC.  *See id.* § 60.2-619(D).  After that VEC appellate panel makes its

determination on the appeal, *see id.* § 60.2-620, either party has the ability to notice a further

appeal to the full VEC, *see id.* § 60.2-622.  And after the full VEC has ruled, a party is entitled to

judicial review in an appropriate Virginia circuit court.  *See id.* § 60.2-625.

### B.    PLAINTIFF HAS NOT PLED A PLAUSIBLE PRIVACY ACT NON-DISCLOSURE CLAIM

This memorandum will first consider plaintiff's non-disclosure claim, *see* 5 U.S.C. §

552a(g)(1)(D); *i.e.*, that DOD violated the Privacy Act's non-disclosure provision by transmitting

the reason that plaintiff was not "employed" – the indefinite suspension of his access to

classified information – to VEC after plaintiff sought unemployment benefits.  In order to state a

claim, plaintiff must provide non-conclusory factual allegations that would render the following

plausible:  "1) the disclosed information is a 'record' contained within a 'system of records'; 2)

the agency improperly disclosed the information; 3) the disclosure was willful or intentional; and

4) the disclosure adversely affected the plaintiff." *Logan v. Dep't of Veterans Affairs*, 357 F.

Supp. 2d 149, 154 (D.D.C. 2004).  For several reasons, plaintiff has not plausibly pled that  DOD

"improperly disclosed the information" about the reason for his alleged "unemployment."

a.    At the outset, plaintiff cannot seriously maintain that he did not consent to DOD's

disclosure – *he* applied for unemployment benefits, and thus knew or had constructive

knowledge (given the explicit notice provided by Virginia law and the VEC) that VEC would

communicate with DOD to determine the reason that plaintiff was allegedly "unemployed" and

thus whether plaintiff was entitled to benefits.[15]  And courts have so recognized.  *See Lamb v.*

---

[15]Indeed, any other conclusion would allow current or former federal employees to
pervert the unemployment compensation system, requiring federal agencies to withhold
information about the end of a claimant's employment under threat of Privacy Act liability, thus
ostensibly guaranteeing the receipt of unemployment benefits – regardless of whether the
claimant is entitled to such benefits.

*Modly*, 2021 WL 1198158, at *13 (D. Md. Mar. 30, 2021).  *Cf. Doe v. DOJ*, 660 F. Supp. 2d 31, 48 (D.D.C. 2009) ("By filing for unemployment benefits, plaintiff raised the issue of his "eligibility ... rights and benefits" before the Unemployment Commission.").

b.      But more importantly, DOD's disclosure to the VEC was undoubtedly appropriate under the "routine use" exception to the Privacy Act.  *See* 5 U.S.C. § 552a(b)(3).  As stated above, any invocation of the "routine use" exception has two parts:  an agency must demonstrate that its disclosure was "compatible with the purpose for which the agency collected the personal information, and be in accordance with a routine use the agency published in the Federal Register."  *Fattahi*, 328 F.3d at 178.  Both are easily established here, as courts have held in rejecting nearly identical Privacy Act claims concerning the disclosure of employment information to state unemployment compensation agencies.  *See, e.g.*, *Doe*, 660 F. Supp. 2d at 47-48; *Gardner v. United States*, 1999 WL 164412, at *6 (D.D.C. Jan. 29, 1999).

Initially, the federal government has published the disclosure of employment information to state unemployment compensation agencies in the *Federal Register* as a "routine use"; in fact, it has done so on two different occasions.  OPM has identified as a "routine use" the release of records concerning "personnel actions" (which includes "suspensions") to the following:

> a national, state, county, municipal, or other publicly recognized . . . income security administration agency (*e.g.*, *state unemployment compensation agencies*) when necessary to adjudicate a claim under the retirement, insurance, unemployment, or health benefits program of the [OPM] or an agency cited above . . . .

*Privacy Act of 1974: Update Existing System of Records*, 77 Fed. Reg. 73694, 73696 (Dec. 11, 2012) (emphasis added).  Even more specifically, DOD itself has identified as a "routine issue" the dissemination of its national security clearance information (including records concerning "security clearance eligibility status and access status") in exactly the instant situation: "to a Federal agency or state unemployment compensation office upon its request in order to

- 26 -

adjudicate a claim for unemployment compensation benefits when the claim is made as a result of a qualifications, suitability, fitness, security, identity credential, or access determination." *Privacy Act of 1974: System of Records*, 83 Fed. Reg. 52420, 52424 (Oct. 17, 2018).

Nor is there any real question concerning whether this "routine use" – informing an unemployment compensation agency about the nature of plaintiff's employment – is "compatible" with the purposes for which the federal government placed the information in question in a "record." *See Fattahi v. ATF*, 186 F. Supp. 2d 656, 660 (E.D. Va. 2002) ("For the two purposes to be compatible, there must a 'concrete relationship or similarity ... between the disclosing agency's purpose in gathering the information and in its disclosure." (quoting *Britt v. Naval Inv. Serv.*, 886 F.2d 544, 549-50 (3d Cir. 1989))), *aff'd*, 328 F.3d 176 (4th Cir. 2003). The record in question here was obviously created in order to document both DOD's decision to revoke plaintiff's eligibility to access classified information and the reasons for that decision. And that is completely consistent with the dissemination of the record to the VEC for use in adjudicating plaintiff's own application for unemployment benefits – to explain the basis of plaintiff's current employment situation vis-à-vis DOD, as required by Virginia law. *See, e.g.*, *Melvin v. SSA*, 126 F. Supp. 3d 584, 606 (E.D.N.C. 2015) (holding that "it cannot seriously be disputed" that Social Security Administration's dissemination of medical report on a social security claimant to the Department of Veterans' Affairs for the latter evaluation of the same claimant's entitlement to benefits was "compatible"), *aff'd*, 686 Fed. Appx. 230 (4th Cir. 2017).

The District Court for the District of Columbia's decision in *Doe* is particularly salient on this point. There, after the Department of Justice ("DOJ") revoked plaintiff's security clearance based on psychological fitness concerns, it terminated the employment of an Assistant United States Attorney ("AUSA") through a final letter that detailed some of the psychological

evidence. *See Doe*, 660 F. Supp. 2d at 39. DOJ then transmitted that letter to a state

unemployment benefits agency at the latter's request after the AUSA filed an application for

benefits. *See id.* The court unequivocally held that DOJ's dissemination to the state

unemployment agency was proper under the "routine use" exception to the Privacy Act:

> DOJ disclosed plaintiff's records to determine his eligibility for unemployment benefits. The Court finds this purpose sufficiently compatible with DOJ's purpose in collecting the records and, thus, that defendant has satisfied the "compatibility" requirement.

*Id.* at 48. And as such, under virtually identical circumstances to those presented here, the court

rejected plaintiff's Privacy Act claim. *See id.*

c.      Finally, plaintiff's Privacy Act claims in this Court seek damages, which adds an

additional element to the aforementioned framework; namely, that DOD's disclosure was

"intentional or willful." 5 U.S.C. § 552a(g)(4). Courts have held that because "in most cases

there will be no question 'that the agency acted "intentionally" and "willfully" in the generic

sense of those words[,] ... the words 'intentional' and 'willful' in § 552a(g)(4) do not have their

vernacular meanings; instead, they are terms of art." *Kelley v. FBI*, 67 F. Supp. 3d 240, 257

(D.D.C. 2014) (quoting *White v. OPM*, 840 F.2d 85, 87 (D.C. Cir. 1988)). And in this respect,

an agency only acts "willfully" or "intentionally" if it "flagrantly disregard[s] others' rights

under the Act," *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984); as such, a

"plaintiff must plead sufficient facts to support a plausible inference that the defendant's conduct

was 'so patently egregious and unlawful that anyone undertaking the conduct should have known

it unlawful' in order to survive a motion to dismiss." *Kelley*, 67 F. Supp. 3d at 257 (quoting

*Toolasprashad v. BOP*, 286 F.3d 576, 584 (D.C. Cir. 2002)).

Plaintiff's amended complaint lacks any non-conclusory factual allegations that would

even suggest that DOD acted in a "patently egregious" fashion. As one court explained,

although "[i]t is true that the talismanic words 'willful' and 'intentional' appear in the amended complaint, but those allegations cannot satisfy plaintiffs' pleading burden because they are nothing more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal citation omitted).  Because plaintiff's amended complaint is identical in this respect, his Privacy Act claim should be dismissed.

### B.   PLAINTIFF HAS NOT PLED A PLAUSIBLE ACCURACY-BASED PRIVACY ACT CLAIM

Plaintiff's second Privacy Act claim is brought under § 552(g)(1)(C), which authorizes a private right of action for a violation of the statute's "accuracy" provision.  In order to state a plausible claim under that provision, a plaintiff must plead non-conclusory factual allegations that would render the following conclusions plausible:  "(1) he has been aggrieved by an adverse determination; (2) the [agency] failed to maintain his records with the degree of accuracy necessary to assure fairness in the determination; (3) the [agency's] reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) the [agency] acted intentionally or willfully in failing to maintain accurate records."  *Chambers v. DOI*, 568 F.3d 998, 1007 (D.C. Cir. 2009) (quoting *Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 657 (D.C. Cir. 1996).  Plaintiff's complaint fails at least on the final three prongs of this analytical framework.

The entirety of plaintiff's complaint in this regard alleges only that DOD "unnecessarily and willfully leaked private, inaccurate, and sensitive medical information about" him to the VEC.  *Am. Compl.*, at 8.  But this is nothing more than a "formulaic recitation of the" above-identified "elements of [the Privacy Act] cause of action," and thus can play no role in the plausibility analysis.  *See Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  Put simply, plaintiff's amended complaint contains no averment

that identifies the alleged inaccuracy in the employment-related record that is the subject of his Privacy Act claim.  And this is something that has led other courts to dismiss such claims as implausible.  *See Lamb*, 2021 WL 1198158, at *12.

Although that alone remains sufficient to require dismissal here, this is not merely a technical application of the Supreme Court's plausibility analysis.  To the contrary, plaintiff's failure even to identify the putative inaccuracy in DOD's security clearance revocation memorandum precludes him from plausibly alleging that this putative inaccuracy was the "proximate cause" of the adverse determination (which, here, is presumably the denial of his application for unemployment compensation benefits).  Virginia law, as stated above, defines "misconduct" – *i.e.*, that which will disqualify an applicant from receiving unemployment compensation – to include the mere failure to maintain a license or certification necessary for a position.  And as such, plaintiff must include non-conclusory factual allegations in his complaint concerning how the record in question was inaccurate in order to plead a plausible claim under the Privacy Act.  *See, e.g.*, *Dick v. Holder*,  67 F. Supp. 3d 167, 186 (D.D.C. 2014).

Finally, because plaintiff also seeks damages with respect to his Privacy Act "accuracy" claim, he similarly must plausibly allege that DOD's conduct was "willful" or "intentional."  *See* 5 U.S.C. § 552a(g)(4).  For the reasons identified above with respect to his "disclosure" claim, plaintiff has not come close to doing so.

## CONCLUSION

For the foregoing reasons, this Court should dismiss plaintiff's amended complaint in the above-captioned action.

///

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:      _____/s/_____
DENNIS C. BARGHAAN, JR.
Deputy Chief, Civil Division
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3891
Fax:      (703) 299-3983
Email:  dennis.barghaan@usdoj.gov

DATE: October 17, 2022                    ATTORNEYS FOR DEFENDANTS

OF COUNSEL:      Jenny Naylor
Bernard Doyle
National Guard Bureau

Frederick Horton
Department of the Air Force

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing ("NEF") to the following:

Martin Akerman
2001 North Adams Street, Unit 440
Arlington, Virginia  22101
Email: makerman.dod@gmail.com


Date: October 17, 2022               _____/s/_____
                                     DENNIS C. BARGHAAN, JR.
                                     Deputy Chief, Civil Division
                                     Assistant U.S. Attorney
                                     2100 Jamieson Avenue
                                     Alexandria, Virginia 22314
                                     Telephone: (703) 299-3891
                                     Fax:        (703) 299-3983
                                     Email:  dennis.barghaan@usdoj.gov

                                     ATTORNEYS FOR DEFENDANT