IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MARTIN AKERMAN,                          )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )        1:22-cv-696 (LMB/WEF)
                                         )
LLOYD J. AUSTIN, III, SECRETARY OF       )
DEPARTMENT OF DEFENSE, et al.,           )
                                         )
            Defendants.                  )

MEMORANDUM OPINION

Before the Court are defendants' Motion to Dismiss [Dkt. No. 46] the operative

Amended Complaint filed on July 21, 2022 [Dkt. No. 6] and plaintiff's multiple motions for

relief, which include numerous requests for leave to amend his complaint [Dkt. Nos. 25, 26, 27,

36, 55, 91].

Finding that oral argument will not aid in the decisional process, the Court will resolve

the motions on the papers. For the reasons that follow, defendants' Motion to Dismiss will be

granted, plaintiff's motions will be denied, and this civil action will be dismissed with prejudice.

I. BACKGROUND

Acting pro se, plaintiff Martin Akerman ("plaintiff" or "Akerman") initiated this civil

action on June 21, 2022, by filing a complaint and a motion for leave to proceed in forma

pauperis. [Dkt. Nos. 1, 2]. On June 23, 2022, the Court denied plaintiff's in forma pauperis

application, finding "more than sufficient funds in his checking account to cover the required

filing fee[.]" [Dkt. No. 5]. Pursuant to its obligation to screen a complaint when a plaintiff seeks

to proceed without prepaying fees or costs under 28 U.S.C. § 1915(e)(2)(B), the Court also

dismissed the complaint without prejudice to permit plaintiff to "refile a factually sufficient

complaint once his claims have been administratively exhausted or otherwise become ripe." Id. at 3. On July 21, 2022, plaintiff filed the operative Amended Complaint. Am. Compl. [Dkt. No. 6].

In his Amended Complaint, plaintiff asserts eighteen claims challenging various employment actions taken against him while he served as a civilian employee within the United States Department of the Air Force and the National Guard Bureau against eight defendants, the Department of Defense, the Department of the Air Force, the Department of the Army, the Defense Counterintelligence and Security Agency, Secretary of Defense Lloyd J. Austin III, Secretary of the Army Christine E. Wormuth, Secretary of the Air Force Frank Kendall, and Chief of the National Guard Bureau General Daniel R. Hokanson (collectively, "defendants"). Id. at 1-3.

The gravamen of the Amended Complaint is defendants' decision to revoke Akerman's eligibility for a security clearance, which led first to his indefinite suspension and then to his resignation. As outlined in the Amended Complaint and its attachments, Akerman signed a Questionnaire for National Security Positions, Standard Form 86 on November 8, 2019, in which he indicated that he had been hospitalized for a mental health condition and listed dates of treatment around February 2012. Am. Compl., Att. 1 [Dkt. No. 6-1] at 6. In a subsequent interview with an investigator, he confirmed his "involuntary hospitalization for an emotional/mental health condition" and his outpatient mental health treatment in 2012 and then from 2013 to 2018. Id. Because plaintiff's background investigation did not include a recent opinion by a qualified mental health professional acceptable to the United States government, on June 2, 2020, the Department of Defense Consolidated Adjudications Facility sent Akerman a Request for Medical Evaluation "to obtain a professional medical opinion regarding whether a

2

condition exists that could affect [plaintiff's] judgment and/or reliability." Id. Akerman did not

respond to that request, even after receiving an extension of the time period in which to respond

on October 21, 2020. Id. As a result, in a memorandum dated August 12, 2021 and an

accompanying Statement of Reasons, which were sent to Akerman, the Department of Defense

Consolidated Adjudications Facility indicated that it had determined, "based on the available

information," that Akerman "may have a condition that could affect [his] ability to properly

safeguard classified or sensitive information" and his "psychological condition remains a

security issue." Id. The memorandum informed Akerman of the agency's decision to revoke his

eligibility for a security clearance and that he had sixty calendar days from the date of receipt to

respond to the decision, after which it would become final. Id. at 3-5. On August 17, 2021,

Akerman was notified that his current access to classified information would continue in the

interim. Am. Compl, Att. 2 [Dkt. No. 6-1] at 8.

   While the determination about his eligibility for a security clearance was pending,

Akerman moved to a new position within the Department of Defense as Chief Data Officer of

the National Guard Bureau, a position "requiring the ability to obtain a [Top Secret] clearance."

Am. Compl. [Dkt. No. 6] at 9. Akerman was selected for the position on July 29, 2021, and was

formally appointed to the position on December 20, 2021; however, after the National Guard

Bureau learned of the issue with his eligibility for a security clearance, his access to classified

information was suspended. Id. at 8-9. On February 14, 2022, Akerman was suspended from

the National Guard Bureau for sixty-nine days, and on April 11, 2022, he was placed on an

indefinite suspension. Id.; Am. Compl., Att. 1 [Dkt. No. 6-1] at 2. On June 6, 2022, Akerman

resigned from his position as Chief Data Officer of the National Guard Bureau. Am. Compl.

[Dkt. No. 6] at 8; Am. Compl., Att. 3 [Dkt. No. 6-1] at 12.

At some point after he was indefinitely suspended, Akerman applied for unemployment benefits with the Virginia Employment Commission. As a result, the Department of Defense responded to a Virginia Employment Commission inquiry about Akerman's employment and the basis for his indefinite suspension. Am. Compl., Att. 1 [Dkt. No. 6-1] at 2. That response discussed plaintiff's inability to maintain a security clearance, which was a condition of employment, and included the Department of Defense Consolidated Adjudications Facility's August 12, 2021 memorandum and the Statement of Reasons. Id. at 2-6.

In addition to challenging plaintiff's suspension, the Amended Complaint also challenges other aspects of his employment. First, it alleges that from April 2021 to March 2022, first within the Department of the Air Force and later the National Guard Bureau, Akerman endured a "deliberately hostile work environment." Am. Compl. [Dkt. No. 6] at 9. Second, it asserts that the Department of the Air Force retaliated against him for engaging in unspecified whistleblowing activity and discriminated against him due to his age by refusing to comply with an agreement to repay his student loans. Id. at 5-6, 9. Based on these employment actions, the Amended Complaint alleges violations of Title VII of the Civil Rights Act ("Title VII"), the Rehabilitation Act, the Age Discrimination in Employment Act ("ADEA"), the Civil Service Reform Act ("CSRA"), the Whistleblower Protection Act ("WPA"), and the Privacy Act.

As defendants discuss in their Motion to Dismiss, plaintiff has challenged many of the underlying employment actions in administrative proceedings before the Merit Systems Protection Board ("MSPB") and the Equal Employment Opportunity Commission ("EEOC"). [Dkt. No. 47] at 7-9; see Am. Compl. [Dkt. No. 6] at 5-6 (identifying claims which Akerman brought before the EEOC or MSPB). Several of these claims remain pending before the MSPB. See [Dkt. No. 47] at 7-9; see, e.g., Akerman v. Dep't of the Air Force, No. DC-1221-22-0445-

4

W-1 (challenging six employment actions by the Department of the Air Force, including interference with his student loan repayment benefits and security clearance determination); Akerman v. Dep't of the Army, No. DC-1221-22-0257-W-1 (challenging interactions with National Guard Bureau colleagues, supervisors, and contractors).

Since filing the Amended Complaint, plaintiff has filed 5 motions for leave to amend his Amended Complaint, see [Dkt. Nos. 15, 25, 26, 27, 36], four of which remain pending before the Court, and he has attempted to file several amended complaints without leave of Court, see [Dkt. Nos. 45, 59, 63, 76]. Because the Court has not granted plaintiff leave to amend, the operative complaint is the July 21, 2022 Amended Complaint, which is the complaint defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. [Dkt. No. 46]. Plaintiff has responded to defendants' Motion to Dismiss in his "Roseboro Response to Defendant's Dispositive Motion(s)" filed on October 18, 2022 [Dkt. No. 50], and his "Roseboro Objection: Hearsay Objections and Issues of Material Fact" filed on November 1, 2022 [Dkt. No. 86]. Since defendants filed their Motion to Dismiss, plaintiff has also filed 33 other pleadings, totaling over 1,400 pages, most of which are attempts to amend the Amended Complaint by adding records from his ongoing MSPB proceedings. See [Dkt. Nos. 55-56, 58-85, 87-89].

## II. PLAINTIFF'S "ROSEBORO MOTION TO QUASH"

The Court first turns to plaintiff's pending "Roseboro Motion to Quash 3 Dispositive Motions That Were Docketed When the Clerk's Office Was Closed" ("Motion to Quash") [Dkt. No. 55], which seeks to "[q]uash or otherwise label . . . as untimely" defendants' pending Motion to Dismiss [Dkt. No. 46] as well as a Motion for an Enlargement of Time that defendants filed on September 29, 2022 [Dkt. No. 19]. There is no basis for granting the requested relief. Although

5

this Motion to Quash is somewhat difficult to understand, plaintiff appears to be complaining that defendants' Motion to Dismiss is untimely because it was filed after the Clerk's office was closed on October 17, 2022 and should therefore be considered as filed late on October 18, 2022. This argument has no merit.

Fed. R. Civ. P. 6(a)(4) provides that the "last day" of a time period for electronic filing ends "at midnight in the court's time zone." Defendants' deadline to respond to plaintiff's Amended Complaint was October 17, 2022. [Dkt. No. 24]. Because defendants electronically filed the Motion to Dismiss on October 17, 2022, before midnight, it was timely filed. As for defendants' Motion for an Enlargement of Time, it was timely filed on September 29, 2022, which renders moot any objection by plaintiff.

For these reasons, plaintiff's Motion to Quash [Dkt. No. 55] will be denied.

### III. DEFENDANTS' MOTION TO DISMISS

Next, the Court considers defendants' Motion to Dismiss. [Dkt. No. 46]. Although the Amended Complaint asserts eighteen claims, each labeled with number and letter identifiers, the claims contain limited factual allegations which are difficult to follow. To facilitate its interpretation of the Amended Complaint and resolution of the Motion to Dismiss, the Court has grouped related claims with the relevant facts alleged in the Amended Complaint.[1]

Defendants move to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Rule 12(b)(1) requires that a civil action be dismissed when the court lacks subject matter jurisdiction over the dispute. The plaintiff bears the burden of proving that subject matter jurisdiction exists. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When a defendant

---

[1] The grouping of claims is based on the "Statement of Claim" section of the Amended Complaint, where plaintiff has categorized his claims into five groups and provides a "statement" for each group of enumerated claims. See [Dkt. No. 6] at 8-10.

challenges subject matter jurisdiction on the grounds that "the complaint fails to allege sufficient facts to support subject matter jurisdiction," a court "assume[s] the truthfulness of the facts alleged." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009). When a defendant "challenges the veracity of the facts underpinning subject matter jurisdiction," as defendants do here, a court may consider evidence outside the complaint to determine whether there are facts that support jurisdiction "without converting the motion to a summary judgment proceeding." Id. at 192.

Rule 12(b)(6) requires that a complaint be dismissed when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss, a complaint must allege enough facts "to raise a right to relief above the speculative level." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Twombly, 550 U.S. at 555). "Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." Id. (quoting Iqbal, 556 U.S. at 679). A pro se complaint is "'to be liberally construed,' and . . . 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). Nevertheless, a pro se complaint "still must contain 'enough facts to state a claim for relief that is plausible on its face.'" Thomas v. The Salvation Army S. Territory, 841 F.3d 632, 637 (4th Cir. 2016) (quoting Twombly, 550 U.S. at 570).

Defendants have written a comprehensive, well-reasoned, and cogent memorandum in support of their Motion to Dismiss. Finding that defendants' memorandum provides an accurate statement of the law applicable to plaintiff's claims, for the following reasons, the Court adopts the reasoning in defendants' memorandum and will grant the Motion to Dismiss.

7

## A. <u>Unlawful Suspension and Constructive Discharge Claims</u>

The Amended Complaint alleges that the Department of the Air Force and Defense

Counterintelligence and Security Agency "conspire[d] to revoke [his] security clearance,"

leading to an unlawful suspension of his employment and ultimate constructive discharge. Am.

Compl. [Dkt. No. 6] at 8. After plaintiff moved to the National Guard Bureau as Chief Data

Officer, a position requiring a Top Secret security clearance, the National Guard Bureau

indefinitely suspended him, and he ultimately resigned. <u>Id.</u> at 8-9. In connection with his

"unlawful suspension and constructive discharge," the Amended Complaint lists a series of

alleged violations of various federal laws, including: (1) discrimination in violation of Title VII,

the Rehabilitation Act, and the ADEA (identified as "Issue 1" in the Amended Complaint); (2)

retaliation in violation of the WPA for "[w]illful obstruction of [p]laintiff's right to compete for

employment" (identified as "Claim 2b" and "Claim 4b"); (3) unlawful suspension in violation of

the WPA (identified as "Claim 2c" and "Claim 4c"); (4) unlawful suspension in violation of the

CSRA and the ADEA (identified as "Claim 5a"); and (5) unlawful suspension in violation of the

CSRA and the Rehabilitation Act (identified as "Claim 7a"). <u>Id.</u> at 5-6, 8.

In their Motion to Dismiss, defendants correctly point out that the Court lacks jurisdiction

over all these claims, because, as pleaded, all of them are based on, or connected to, the

revocation of his eligibility for a security clearance. <u>See id.</u> at 8. Under Supreme Court and

Fourth Circuit precedent, this Court does not have jurisdiction over these claims. Specifically, in

<u>Department of the Navy v. Egan</u>, the Supreme Court recognized that the "[p]redictive judgment"

involved in a security clearance determination "must be made by those with the necessary

expertise in protecting classified information," and therefore "the protection of classified

information must be committed to the broad discretion of the agency responsible[.]" 484 U.S.

518, 529 (1988). Accordingly, the Supreme Court reasoned that review by an "outside

nonexpert body" of the "substance of such a judgment" is not appropriate, and held that the MSPB did not have the authority to review a security clearance determination, absent an indication to the contrary from Congress, which did not exist in the CSRA. Id. at 529, 530-32.

The Fourth Circuit has applied the reasoning of Egan to employment disputes such as those involved in this civil action, by holding that neither Title VII, the Rehabilitation Act, the ADEA, nor the WPA contain an "expression of purpose by Congress" to subject security clearance decisions to "judicial scrutiny." Becerra v. Dalton, 94 F.3d 145, 149 (4th Cir. 1996) (Title VII); see Guillot v. Garrett, 970 F.2d 1320, 1326 (4th Cir. 1992) (Rehabilitation Act); Campbell v. McCarthy, 952 F.3d 193, 203-05 (4th Cir. 2020) (ADEA and WPA). Therefore, "a claim that an adverse employment decision violated a plaintiff's statutory rights is unreviewable when it 'necessarily depends upon review of' an agency's security clearance decision." Campbell, 952 F.3d at 205-06 (quoting Guillot, 970 F.2d at 1326).

Here, adjudicating plaintiff's indefinite suspension and constructive discharge claims under Title VII, the Rehabilitation Act, the ADEA, and the WPA would require the Court to review the substance of the Department of Defense's security clearance determination. For instance, determining whether the reasons for plaintiff's indefinite suspension or constructive discharge were a pretext for discrimination based on his membership in a protected class, disability, or age would necessitate review of the merits of the Department of Defense's security clearance decision. Likewise, evaluating plaintiff's WPA claim would entail reviewing whether plaintiff was retaliated against for engaging in a protected activity rather than his inability to obtain or maintain a security clearance.

For these reasons, the Court lacks subject matter jurisdiction over Issue 1 and Claims 2b, 2c, 4b, 4c, 5a, and 7a, and those claims will be dismissed.

### B. <u>Student Loan Repayment Claims</u>

The Amended Complaint seeks to recover $29,615.37 representing the remaining student

loan payments which the Department of the Air Force allegedly failed to pay pursuant to a

purported agreement to repay plaintiff's student loans.  Am. Compl. [Dkt. No. 6] at 9, 11.

Specifically, the Amended Complaint alleges that on June 28, 2021, plaintiff "agreed to

Alternative Dispute Resolution through the Office of Special Counsel," <u>id.</u>, and that on August

11, 2021, the Department of the Air Force agreed to "[r]equest payments for [student loan

repayments] be restarted back to the date they were dropped" and "[r]etroactive payments to the

date the ser[v]ice agreement was signed and approved: 10 Dec 2019," Am. Compl., Att. 4 [Dkt.

No. 6-1] at 18-19.  According to plaintiff, he was authorized to receive a total repayment of

$40,000 for three years of service expiring on December 10, 2022.  <u>Id.</u>  The Amended Complaint

alleges that, as of June 30, 2022, plaintiff has not received any of the outstanding remaining

payments, and that this nonpayment constitutes retaliation in violation of the Whistleblower

Protection Act (identified as "Claim 2a" and "Claim 4a"), and age discrimination in violation of

the ADEA (identified as "Claim 5b").  Am. Compl. [Dkt. No. 6] at 5-6, 9.

Defendants argue that the Court lacks jurisdiction over these claims, because they remain

pending before the MSPB as part of an Individual Right of Action appeal and are not the type of

employment-related claims that fall within the jurisdiction of a district court under the CSRA and

WPA.  Defendants are correct.

The CSRA "establishes a framework for evaluating personnel actions taken against

federal employees," <u>Kloeckner v. Solis</u>, 568 U.S. 41, 44 (2012), and "provide[s] an integrated

scheme of administrative and judicial review of employment decisions involving government

employees," which depends on the severity of the challenged personnel action and the nature of

the complaint.  <u>Chin-Young v. United States</u>, 774 F. App'x 106, 111 (4th Cir. 2019) (internal

10

quotations omitted). The CSRA also "created the [MSPB] to review certain serious personnel actions against federal employees." Perry v. Merit Sys. Prot. Bd., 137 S. Ct. 1975, 1979 (2017).

Under the CSRA's framework, when a federal employee seeks to challenge a "major personnel action," such as termination or a reduction in grade or pay, that action is directly appealable to the MSPB. Zachariasiewicz v. U.S. Dep't of Just., 48 F.4th 237, 242 (4th Cir. 2022); see Kloeckner, 568 U.S. at 44; 5 U.S.C. § 7512 (defining major personnel actions which may be appealed directly to the MSPB). By contrast, when an employee challenges "less serious personnel actions that violate certain prohibited personnel practices" under the CSRA, those actions are not directly appealable to the MSPB; rather, the employee must first file a complaint with the Office of Special Counsel. Zachariasiewicz, 48 F.4th at 242-43 (internal quotations omitted); 5 U.S.C. § 1214(a)(3). If that office pursues the complaint and upholds the challenged personnel action, the employee may appeal that decision to the MSPB. On the other hand, if the Office of Special Counsel decides not to pursue the complaint, "the CSRA does not provide for any further administrative or judicial review." Zachariasiewicz, 48 F.4th at 243 (internal quotations omitted). Similarly, "[a]llegations of conduct that is prohibited by the WPA" are not directly appealable to the MSPB, unless they involve major personnel action, and, instead, "must be pursued before the [Office of Special Counsel] prior to the MSPB." Id. But unlike CSRA claims, if the Office of Special Counsel does not act on a complaint alleging a WPA violation, the employee may seek MSPB review by filing an Individual Right of Action appeal. Id.

Once the MSPB has rendered a decision on an employee's case, whether it involved major or less serious personnel action, judicial review of MSPB decisions for claims under the CSRA is ordinarily available only in the Federal Circuit, while judicial review of decisions regarding WPA claims is available in the Federal Circuit or "in any court of appeals of

competent jurisdiction." 5 U.S.C. § 7703(b)(1); Zachariasiewicz, 48 F.4th at 242-43.  Only when an employee has brought a special type of case—known as a "mixed case"—is judicial review available in a federal district court.  Zachariasiewicz, 48 F.4th at 243; Perry, 137 S. Ct. at 1981; 5 U.S.C. § 7703(b)(2).

A mixed case challenges a "serious adverse employment action taken against [the employee]" under the CSRA where that action is attributed, "in whole or in part, to bias based on race, gender, age, or disability, in violation of federal antidiscrimination laws."  Perry, 137 S. Ct. at 1979; Zachariasiewicz, 48 F.4th at 243.  Importantly, a mixed case must involve a challenge to a "major personnel action" that is directly appealable to the MSPB, not merely a less serious personnel action that must be brought first to the Office of Special Counsel.  5 U.S.C. § 7702(a)(1).  The Fourth Circuit has held that "only those personnel actions that an employee can challenge before the MSPB in the first instance can serve as the basis for a mixed case." Zachariasiewicz, 48 F.4th at 243-44.  With mixed cases, the employee is not required to wait until the MSPB has rendered a final decision before seeking judicial review.  Instead, if a mixed case remains pending before the MSPB for 120 days or more without "judicially reviewable action," the employee is permitted to remove the case from the MSPB and file a civil action in a federal district court.  5 U.S.C. § 7702(e)(1)(B).

It appears that plaintiff is attempting to invoke this Court's jurisdiction over his WPA and ADEA claims relating to his student loan repayment agreement by characterizing them as a mixed case pending for "[m]ore than 120 [d]ays from the timely Individual Right of Action appeal with MSPB without a judicially reviewable action."  Am. Compl. [Dkt. No. 6] at 5.  As defendants point out, plaintiff cannot seek district court review of these claims, which remain pending before the MSPB as part of an Individual Right of Action appeal, because the claims do

not qualify as a mixed case.  The Department of the Air Force's refusal to repay plaintiff's

student loans is not the kind of major personnel action that is directly appealable to the MSPB

and therefore cannot be the basis for a mixed case.  See Zachariasiewicz, 48 F.4th at 244

("[P]ersonnel action giving rise to an [Individual Right of Action] appeal cannot form the core of

a mixed case because that personnel action is not directly appealable to the MSPB and instead

must be challenged with the [Office of Special Counsel] prior to the MSPB.").  Therefore, even

though plaintiff's repayment claims involve an allegation of age discrimination, they do not

establish a mixed case that can be removed from the MSPB to a federal district court.  Instead,

plaintiff must exhaust review before the MSPB as to his WPA claims (Claims 2a and 4a).  Once

properly exhausted, the WPA claims are only appealable either to the Federal Circuit or to "any

court of appeals of competent jurisdiction," 5 U.S.C. § 7703(b)(1), but not to a district court.

Even if the Court had jurisdiction over plaintiff's WPA claims (which it does not), the

Amended Complaint fails to state a claim for retaliation under the WPA.  To maintain a claim for

WPA retaliation, the Amended Complaint must allege facts, not opinions, indicating "(1) that

[the plaintiff] engaged in a whistleblowing activity by making a protected disclosure under 5

U.S.C. § 2302(b)(8); and (2) based on the protected disclosure, the [employer] took or failed to

take a personnel action as defined by 5 U.S.C. § 2302(a)."  Hooven-Lewis v. Caldera, 249 F.3d

259, 276 (4th Cir. 2001).  The Amended Complaint does not allege any facts describing that

plaintiff made a protected disclosure, which is defined as "any disclosure of information . . .

which the employee . . . reasonably believes evidences any violation of any law, rule, or

regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a

substantial and specific danger to public health or safety," to a higher authority or the OSC, 5

U.S.C. § 2302(b)(8), or a causal connection between such a disclosure and any adverse personnel

action. See Hooven-Lewis, 249 F.3d at 276. Because the Amended Complaint fails to allege any facts supporting these elements, it does not state a plausible WPA retaliation claim.

As defendants point out, even though the Court lacks jurisdiction over the WPA claims, the Court must independently consider the merits of plaintiff's ADEA claim (Claim 5b), which plaintiff alleges has been exhausted due to receipt of a right-to-sue notice from the EEOC. See Zachariasiewicz, 48 F.4th at 249 (remanding to the district court to determine "whether it may exercise subject matter jurisdiction over [a]ppellant's Title VII claims, independently of the WPA and CSRA claims"). This claim must be dismissed because, as defendants argue, it does not allege a plausible claim of age discrimination. To state a prima facie case under the ADEA, a complaint must allege facts, not opinions, indicating that the plaintiff "(1) was a member of a protected class, i.e., age 40 or older, (2) suffered an adverse employment action, (3) was meeting his employer's expectations at the time of the adverse action, and (4) was replaced by or treated less favorably than someone outside the protected class or someone 'substantially younger.'" Sullivan v. Perdue Farms, Inc., 133 F. Supp. 3d 828, 837 (E.D. Va. 2015). The Amended Complaint contains only a conclusory allegation of "age discrimination" and is devoid of any factual allegations suggesting that plaintiff was treated less favorably than a younger employee for any reason. As such, the Amended Complaint has not pleaded a plausible ADEA claim.

For these reasons, the claims based on the Department of the Air Force's alleged failure to repay plaintiff's student loans under the WPA—Claims 2a and 4a—will be dismissed for lack of jurisdiction, and Claim 5b under the ADEA will be dismissed for failure to state a plausible claim for relief.

### C. Hostile Work Environment Claims

The Amended Complaint alleges that plaintiff "endured a deliberately hostile environment" in the Department of the Air Force and the National Guard Bureau "for the 12

14

months between April 2021 and March 2022."[2]  Am. Compl. [Dkt. No. 6] at 9.  This hostile

environment is described as the Department of the Air Force and the National Guard Bureau

taking "[n]umerous documented actions, investigated by the Office of Special Counsel, . . . that

created a hostile work environment" in violation of the Whistleblower Protection Act (identified

as "Claim 3a" as to the Department of the Air Force and "Claim 3b" as to the National Guard

Bureau).  Id. at 5.  The Amended Complaint also alleges that plaintiff experienced "[d]ifferential

treatment . . . but-for age discrimination" in violation of the ADEA (identified as "Claim 6a"), id.

at 6, and that plaintiff was "limit[ed], segregat[ed], or classif[ied] . . . in a way that adversely

affects [his] opportunities or status" in violation of Title VII and the Rehabilitation Act

(identified as "Claim 8a"), id. at 7.  The Amended Complaint states that "[m]ore will be provided

in court."  Id. at 9.

 In their Motion to Dismiss, defendants argue that the Court lacks jurisdiction over

plaintiff's hostile work environment claims because they do not constitute a mixed case and are

the subject of a pending Individual Right of Action appeal.  The Court agrees with defendants.

Because the Amended Complaint has not alleged that plaintiff's WPA and discrimination claims

involve any major personnel action that is directly appealable to the MSPB, these claims do not

qualify as a mixed case that can be removed from the MSPB to a district court.

 Even considering plaintiff's hostile work environment claims under the ADEA, Title VII,

and the Rehabilitation Act independent of the WPA claim, the Amended Complaint does not

state a plausible claim for relief.  To state a hostile work environment claim, a complaint must

allege facts, not opinions, indicating that the plaintiff "was subjected to (1) unwelcome conduct,

---

[2] This appears to be the same time period during which the issues concerning plaintiff's
eligibility for a security clearance had arisen.

(2) based on [a protected characteristic], that was (3) severe or pervasive enough to make [the] work environment hostile or abusive and (4) imputable to . . . [the] employer." <u>Bazemore v. Best Buy</u>, 957 F.3d 195, 200 (4th Cir. 2020). In evaluating whether a complaint alleges a "plausible hostile work environment claim," the Fourth Circuit has directed courts to consider "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Mustafa v. Iancu</u>, 313 F. Supp. 3d 684, 695 (E.D. Va. 2018) (quoting <u>Okoli v. City of Balt.</u>, 648 F.3d 216, 222 (4th Cir. 2011)). "[R]ude treatment from coworkers, callous behavior by one's supervisors, or a routine difference of opinion and personality conflict with one's supervisors are not actionable," and "[i]ncidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard" of a hostile work environment claim. <u>Evans v. Int'l Paper Co.</u>, 936 F.3d 183, 192 (4th Cir. 2019) (quoting <u>Equal Emp. Opportunity Comm'n v. Sunbelt Rentals, Inc.</u>, 521 F.3d 306, 315 (4th Cir. 2008)). Rather, a complaint must allege facts indicating that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>McIver v. Bridgestone Americas, Inc.</u>, 42 F.4th 398, 407 (4th Cir. 2022) (quoting <u>Boyer-Liberto v. Fontainebleau Corp.</u>, 786 F.3d 264, 277 (4th Cir. 2015)).

Here, the Amended Complaint fails to allege any facts about specific harassing conduct experienced by plaintiff based on his age, disability, or any other protected characteristics, let alone facts suggesting that the unwelcome conduct was severe or pervasive. Plaintiff alleges only that he "endured a deliberately hostile environment" and was "[l]imit[ed], segregate[d], or classif[ied] . . . in a way that adversely affects [his] opportunities or status[.]" Am. Compl. [Dkt.

No. 6] at 7, 9. These conclusory allegations are insufficient to state a plausible hostile work environment claim.

Even if the Court had jurisdiction over plaintiff's WPA claim, it would have to be dismissed because, as discussed above, the Amended Complaint has not alleged that plaintiff made a protected disclosure about any wrongdoing that would qualify him as a whistleblower or that defendants created a hostile work environment based on his protected status as a whistleblower. See Clark v. Brown, 536 F. Supp. 3d 56, 67 (E.D. Va. 2021) (discussing requirements for pleading a hostile work environment claim under the WPA).

In sum, plaintiff's hostile work environment claims under the WPA—Claims 3a and 3b—will be dismissed for lack of jurisdiction, and the claims under the ADEA, Title VII, and the Rehabilitation Act—Claims 6a and 8a—will be dismissed for failure to state a plausible claim for relief.

### D.   Systemic Discrimination Claims

Next, the Amended Complaint alleges that the Department of Defense has engaged in "systemic discrimination" on the basis of age and has a "[p]ersistent culture of [a]ge [d]iscrimination" in violation of the ADEA (identified as "Claim 6b"). Am. Compl. [Dkt. No. 6] at 6, 10. Specifically, the Amended Complaint asserts that the "military is allowed, and in some cases compelled, by law to deny service opportunities to . . . those above a certain age," and that "[b]y statute, a commissioned officer may be appointed only if he or she is able to complete 20 years of active commissioned service before his sixty-second birthday[.]" Id. at 10. The Amended Complaint also alleges that defendants engage in "[s]ystemic discrimination" on the basis of disability in violation of the Rehabilitation Act (identified as "Claim 8b") by "continu[ing] to publish illegal codes for justifying separation of service in the military" and "[t]his taint and bias carries to the treatment of the civilian workforce," and that the military

17

denies "service opportunities to those unable to meet certain physical standards[.]" Id. at 6, 10.
Finally, the Amended Complaint alleges "[s]ystemic [w]histleblower [r]etaliation" and asserts
that plaintiff has experienced "the same prohibited retaliatory behavior" across two Department
of Defense agencies in violation of the WPA and Presidential Policy Directive 19. Id. at 10.  The
Amended Complaint asserts that the Department of Defense has "[f]ail[ed] to institute and
enforce Presidential Policy Directive 19 ('Protecting Whistleblowers with Access to Classified
Information')" by "allowing two separate agencies to perform illegal actions related to
[p]laintiff's security clearance without intervention, in a persistent sequence of events that
reasonably suggests a deliberate and designed pattern of illegal behavior" (identified as "Claim
3c").  Id. at 5.

 Plaintiff's systemic discrimination claims fail for several reasons.  First, as defendants
point out, the Fourth Circuit has expressly declined to recognize a "private, non-class cause of
action" for individual plaintiffs for "pattern or practice" discrimination under Title VII.  Lowery
v. Circuit City Stores, Inc., 158 F.3d 742, 759-61 (4th Cir. 1998), vacated on other grounds, 52
U.S. 1031 (1999).  Although a plaintiff 'may use evidence of a pattern or practice of
discrimination to help prove claims of individual discrimination," Gilyard v. Northlake Foods,
Inc., 367 F. Supp. 2d 1008, 1016 (E.D. Va. 2005) (quoting Lowery, 158 F.3d at 758-59), there is
no discernable connection between the alleged systemic or persistent discrimination in the
Department of Defense and any unlawful discrimination experienced by plaintiff individually.
Second, plaintiff's claims of systemic discrimination are conclusory and do not allege any facts
supporting discriminatory animus based on his membership in a protected class.

 As for the WPA claims for systemic whistleblower retaliation, because they concern
alleged "illegal actions related to [p]laintiff's security clearance," as previously discussed, the

Court lacks jurisdiction over them.  See Campbell, 952 F.3d at 205.  In any case, as defendants point out, plaintiff's claims do not challenge a major personnel action and are not directly appealable to the MSPB; therefore, they do not qualify as a mixed case over which this Court has jurisdiction.  Even if the Court did have jurisdiction over plaintiff's WPA claims, the Amended Complaint fails to state a claim of retaliation under the WPA, because it does not allege any whistleblowing activity or protected disclosure.  See Hooven-Lewis, 249 F.3d at 276.

For those reasons, plaintiff's systemic discrimination claims under the ADEA and the Rehabilitation Act—Claims 6b and 8b—will be dismissed for failure to state a plausible claim for relief, and Claim 3c under the WPA will be dismissed for lack of jurisdiction.

### E. Privacy Act Claims

The Amended Complaint's last set of claims allege violations of the Privacy Act based on the "improper disclosure and use of personnel and medical records" by the Department of Defense during plaintiff's effort to obtain unemployment benefits.  Am. Compl. [Dkt. No. 6] at 7.  Specifically, the Amended Complaint alleges that defendants "unnecessarily and willfully leaked private, inaccurate, and sensitive medical information" about plaintiff to the Virginia Employment Commission.  Id. at 8.  Attached to the Amended Complaint is a copy of the Department of Defense's "Reply to ES-931 Request for Wage and Separation," which responded to the Virginia Employment Commission's request for information in connection with plaintiff's application for unemployment benefits.  Am. Compl., Att. 1 [Dkt. No. 6-1] at 2.  The response provides the reason for Akerman's indefinite suspension—"failure to attain and/or maintain a condition of employment – security clearance related"—and encloses the Department of Defense Consolidated Adjudications Facility's August 2021 memorandum and the Statement of Reasons.  Id. at 2-6.  The Amended Complaint asserts that the "willful disclosure of [p]laintiff's records is designed to damage [his] potential for pay or employment in the future" and has "immediately

adversely affected [his] ability to receive unemployment benefits" and has caused "inaccurate medical information" to be part of Virginia's state records. Am. Compl. [Dkt. No. 6] at 8.

Based on these allegations, the Amended Complaint asserts a claim for "[f]ailure to [a]ssure [f]airness in [a]gency [d]etermination" in violation of 5 U.S.C. § 552a(g)(1)(C) (identified as "Claim 9a"), i.e., a failure to maintain accurate records, and a "[f]ailure to [c]omply with [o]ther Privacy Act [p]rovisions in violation of 5 U.S.C. § 552a(g)(1)(D) (identified as "Claim 9b"), which the Court construes as challenging the Department of Defense's disclosure to the Virginia Employment Commission as improper in violation of 5 U.S.C. § 552a(b). Id. at 7.

Defendants correctly point out multiple deficiencies in plaintiff's Privacy Act claims. First, the Amended Complaint has not pleaded a plausible claim of failure to maintain plaintiff's records with "accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications . . . or opportunities of, or benefits to the individual that may be made on the basis of such record" where "a determination is made which is adverse to the individual." 5 U.S.C. § 552a(g)(1)(C). Other than alleging in conclusory fashion that defendants transmitted "private, inaccurate, and sensitive medical information" to the Virginia Employment Commission, the Amended Complaint contains no facts that support the assertion that the records were "inaccurate." As such, plaintiff's first Privacy Act claim fails.

The second Privacy Act claim also does not state a plausible claim for relief. 5 U.S.C. § 552a(b) prohibits an agency from "disclos[ing] any record . . . to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains[.]" As defendants point out, the Department of Defense's disclosure to the Virginia Employment Commission was part of the Virginia Employment Commission's processing of plaintiff's application for unemployment benefits, which falls under

20

the "routine use" exception to the Privacy Act, 5 U.S.C. § 552a(b)(3), and therefore cannot support a Privacy Act claim.  "For a disclosure to qualify as a 'routine use,' it must be compatible with the purpose for which the agency collected the personal information, see 5 U.S.C. § 552a(a)(7), and be in accordance with a routine use the agency has published in the Federal Register, see 5 U.S.C. § 552a(e)(4)(D)."  Fattahi v. ATF, 328 F.3d 176, 178 (4th Cir. 2003).  As defendants correctly argue, disclosing records in response to an unemployment compensation agency's request about the nature of plaintiff's employment is a routine use that satisfies the publication requirement and is compatible with the purpose for which the information was collected.  See [Dkt. No. 47] at 26-28; see also Doe v. U.S. Dep't of Just., 660 F. Supp. 2d 31, 47-48 (D.D.C. 2009) (holding that the disclosure of termination letters to a state unemployment commission qualifies as a routine use under the Privacy Act).

Finally, plaintiff seeks to recover damages under the Privacy Act.  To recover monetary damages under the Privacy Act, a plaintiff "must show that the violation was 'intentional or willful.'"  Hogan v. England, 159 F. App'x 534, 537 (4th Cir. 2005) (quoting 5 U.S.C. § 552a(g)(4)).  Under the "intentional or willful" standard, "the violation must have been committed 'without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act.'"  Id. (quoting Scrimgeour v. Internal Revenue, 149 F.3d 318, 326 (4th Cir. 1998)).  The Amended Complaint lacks any facts supporting the conclusory allegation that the Department of Defense's disclosure was "willful."  Am. Compl. [Dkt. No. 6] at 8.

In sum, because the Amended Complaint fails to state a plausible claim for relief under the Privacy Act, Claims 9a and 9b will be dismissed.

## IV. PLAINTIFF'S REQUESTS FOR LEAVE TO AMEND

Given that all of the claims in the Amended Complaint will be dismissed, the Court must consider whether to grant plaintiff leave to file yet another amended complaint. See [Dkt. Nos. 25, 26, 27, 36]. Although "leave to amend should generally be granted in light of 'this Circuit's policy to liberally allow amendment,'" a court "may deny leave to amend 'when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" Adbul-Mumit v. Alexandria Hyundai, LLC, 896 F.3d 278, 293 (4th Cir. 2018) (first quoting Galustian v. Peter, 591 F.3d 724, 729 (4th Cir. 2010), and then quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)). Plaintiff's excessive filings in this civil action, which include numerous repeated attempts to amend his complaint both before and after defendants filed their Motion to Dismiss, provide important context for determining whether dismissal should be granted with leave to amend.

After filing the operative Amended Complaint, on September 1, 2022, plaintiff sought leave to further amend the complaint based on anticipated future developments in his MSPB proceedings. [Dkt. No. 15]. Because the request was premature, the Court denied it without prejudice "to allow plaintiff to file a motion for leave to amend once he has received responses" from the MSPB and the Department of Defense. [Dkt. No. 17].

Despite that decision, plaintiff proceeded to file several duplicative motions for relief, requesting, for example, a court-appointed attorney, waiver of future court costs, and appointment of a special plurality of chancellors to adjudicate his civil action. See [Dkt. Nos. 18, 20, 21, 37, 38, 41]. Plaintiff also objected multiple times to defendants' request for an extension of time to file a responsive pleading and the Court's decision granting that request. Because all of plaintiff's requests for relief were meritless and duplicative, each was denied, and plaintiff

22

was warned against filing frivolous, repetitive motions for relief.  See [Dkt. Nos. 28, 39, 40, 42].

Plaintiff has appealed several of these interlocutory orders to the Fourth Circuit.

In the meantime, plaintiff also filed three successive motions for leave to file an amended

complaint dated October 1, October 3, and October 8, 2022, all of which remain pending before

the Court [Dkt. Nos. 25, 26, 36], and a Motion for Leave to Update Initial Cover Sheet, Update

Case Name [Dkt. No. 27].  The proposed amended complaints do not allege any additional facts

that support the eighteen claims presented in the operative Amended Complaint and are even

more barren of factual allegations.  In fact, it appears that plaintiff seeks to amend his complaint

to add approximately 90 new claims to this civil action.  As defendants point out, none of these

claims contain any factual allegations and are simply pleaded only as phrases or citations to

statutes, such as "Administrative Procedures Act," "FOIA and HIPPA [sic]."  [Dkt. No. 36-1] at

4.  Around 80 of the claims are WPA claims stemming from an Individual Right of Action

appeal challenging a litany of workplace interactions and decisions during plaintiff's

employment within the Department of Defense, such as that he was "handed . . . a letter of

reprimand," "called . . . to have a verbal counseling session," experienced a "significant change

in duties," and witnessed "harmful procedural error" and "conspiracy to commit fraud."  Id. at 5-

13.

Plaintiff's long list of vague employment actions and amorphous violations of the law do

not plead any rational, plausible claims for relief.  See Bing v. Brivo Sys., LLC, 959 F.3d 605,

618 (4th Cir. 2020) (observing that "liberal construction" of a pro se pleading "does not mean

overlooking the pleading requirements under the Federal Rules of Civil Procedure").  "District

judges are not mind readers," and "[e]ven in the case of pro se litigants, they cannot be expected

to construct full blown claims from sentence fragments[.]"  Beaudett v. City of Hampton, 775

F.2d 1274, 1278 (4th Cir. 1985); cf. Folkes v. Nelsen, 34 F.4th 258, 272 (4th Cir. 2022) (holding

that the district court committed reversible error in "look[ing] beyond the claim presented" in a

pro se habeas petition). [3]  As further indication of the fanciful nature of plaintiff's proposed

amendments, he has added extravagant and nonsensical remedies, including a "name clearing

hearing," federal employee health benefits "for life for plaintiff and family," and punitive

damages for "human rights before robots: the total estimated cost of 2 loyal wingmen ($20

million each) and 2 autonomous tanks ($6 million each) for a total of $52 million." [Dkt. No.

36-1] at 15.  For these reasons, plaintiff's pending motions for leave to amend [Dkt. Nos. 25, 26,

27, 36] will be denied.

On October 17, 2022, plaintiff demanded that the Clerk's office file an amended

complaint, even though the Court had not granted him leave to amend.  [Dkt. No. 45].  This

proposed amended complaint suffers from the same deficiencies as his previous attempts to

amend and fails to allege any facts in support of his claims.  Moreover, in this version, plaintiff's

claims challenging his indefinite suspension and violations of the Privacy Act have ballooned

without any factual support, becoming claims for "false imprisonment," "cruel and unusual

punishment," and "depriv[ation] . . . of his property right to his tenured position without [d]ue

[p]rocess."  Id. at 4-5.  The document then rambles on about the Second Amendment,

"information as a weapon," and "the militia's first cousin, the jury."  Id. at 10-16.  No plausible

claim for relief can be discerned in this filing.  Further, even though plaintiff has already been

warned twice that filing "unnecessary, frivolous, and repetitive motions" for relief may result in

sanctions, including dismissal of his complaint, [Dkt. Nos. 40, 42], this proposed amended

---

[3] As defendants point out, even if the Court could discern the nature of plaintiff's new claims,
they would likely be futile and would not survive a motion to dismiss.  [Dkt. No. 57] at 10-14.

complaint includes duplicative requests for relief that have already been denied. See [Dkt. No. 45] at 18-19 (requesting relief denied in prior orders [Dkt. Nos. 28, 39, 40, 42]).

Since October 19, 2022, plaintiff has filed 31 additional pleadings, titled "Roseboro Amended Complaints" and "Roseboro Notices," with accompanying "Roseboro Briefs" that appear to be intended to serve as "clarifying briefs . . . as they relate to the scope of the Amended Complaint. [Dkt. No. 55]; see [Dkt. Nos. 58-85, 87-89]. Plaintiff's most recent attempt to amend his complaint has inundated the Court with an indecipherable stack of documents consisting of 1,472 pages, which appear to include the entirety of the dockets, correspondence, and other records from his MSPB proceedings.[4]

Even though plaintiff is proceeding pro se, it is not this Court's duty to sift through the mass of his "Roseboro" filings to determine whether he has alleged a cognizable claim for relief or whether he has cured the deficiencies that defendants' Motion to Dismiss identified in the Amended Complaint. See Carmel v. CSH & C, 32 F. Supp. 3d 434, 436 (W.D.N.Y. 2014) ("[A] pro se litigant cannot simply dump a stack of exhibits on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain of papers, waiting to be unearthed and refined into a cognizable claim."). Moreover, plaintiff's excessive filing in this civil action has abused the time and resources of this Court as well as the Clerk's office, which has had to expend several hours scanning and docketing plaintiff's filings.[5]

---

[4] For instance, plaintiff's "Roseboro Responsive Material Accompanying Roseboro Amended Complaint and Roseboro Briefs 1-7" includes 311 pages of documents from several of his pending administrative proceedings before the MSPB, among other materials. [Dkt. No. 59]. Plaintiff's "Omnibus to Simplify Pleadings and Hearings" contains 207 pages of documents from another MSPB proceeding, along with other emails and documentation. [Dkt. No. 73].

[5] While this Memorandum Opinion was being finalized, the Court received seven more pleadings from plaintiff as recently as November 2, 2022, which is further evidence of his excessive filing in this civil action. See [Dkt. Nos. 90-96]. These filings include additional attempts to amend

## V. CONCLUSION

For the foregoing reasons, defendants Motion to Dismiss [Dkt. No. 46] will be

GRANTED under Fed. R. Civ. P. 12(b)(1) as to the claims for unlawful indefinite suspension

and constructive discharge (Issue 1 and Claims 2b, 2c, 4b, 4c, 5a, and 7a) and the WPA claims

for failure to repay his student loans (Claims 2a and 4a), hostile work environment (Claims 3a

and 3b), and systemic discrimination (Claim 3c), and under Fed. R. Civ. P. 12(b)(6) as to the

student loan repayment claim under the ADEA (Claim 5b), the hostile work environment claims

under the ADEA, Title VII, and the Rehabilitation Act (Claims 6a and 8a), the systemic

discrimination claims under the ADEA and the Rehabilitation Act (Claims 6b and 8b), and the

Privacy Act claims (Claims 9a and 9b); plaintiff's motions [Dkt. Nos. 25, 26, 27, 36, 55, 91] will

be DENIED; and this civil action will be dismissed with prejudice by an accompanying order.[6]

Entered this 3rd day of November, 2022.

/s/

Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

---

his complaint by way of a "Roseboro Baseline Amended Complaint" [Dkt. No. 90] and
"Roseboro Objection[s]" [Dkt. Nos. 92-96].

Plaintiff also filed another meritless motion, entitled "Closing Roseboro Motion: Motion
to Reconcile Civil Docket and Grant Judgment by Default" ("Motion for Default Judgment"), in
which he repeats his complaint that defendants did not timely respond to the Amended
Complaint because they filed their Motion to Dismiss after the Clerk's office was closed, and
seeks a default judgment based on defendants' alleged failure to timely respond. [Dkt. No. 91].
In addition, plaintiff requests "$150,000 interim relief to allow [him] to retain counsel" and "the
appointment of a [g]rand [j]ury" to investigate his case. Id. As explained above, defendants'
Motion to Dismiss was timely filed and therefore they are not in default. As there is no basis for
any of the frivolous relief requested in the Motion for Default Judgment [Dkt. No. 91], the
motion will be denied.

[6] Normally, a dismissal based on a finding under Fed. R. Civ. P. 12(b)(1) that the Court lacks
subject matter jurisdiction would be without prejudice because the Court lacks the authority to
adjudicate that over which it has no jurisdiction. In this case, plaintiff's track record of not
respecting the Court's decisions and filing repetitive, abusive pleadings justifies a dismissal of
this entire action with prejudice, to make clear that he cannot refile any of the claims discussed in
this opinion.